Charles T. **DOUDS**, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Appellant,

v.

**LOCAL 50, BAKERY AND CONFEC-TIONERY WORKERS INTERNATION-AL UNION, A. F. L.,** Appellee.

No. 328, Docket 23563.

United States Court of Appeals Second Circuit.

Argued May 12, 1955.

Decided June 28, 1955.

Theophil C. Kammholz, General Counsel, Chicago, Ill., David P. Findling, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel and Joseph I. Nachman, Attorney, National Labor Relations Board, Washington, D. C., for appellant.

Cooper, Ostrin & DeVarco, New York City, George A. Nicolau, New York City, of counsel, for appellee.

Before HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation was initiated by the petition of Charles T. Douds, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the Board, filed pursuant to 29 U.S.C.A. § 160(*l*) and seeking injunctive relief pending final adjudication by the Board of a charge that the respondent, Local 50, Bakery and Confectionery Workers International Union, AFL, was

violating section 8(b) (4) (C) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(b) (4) (C).[1] After the answer was filed, petitioner moved for a preliminary injunction to restrain Local 50 and its agents from picketing at the plant of Arnold Bakers, Inc. (hereafter referred to as Arnold), in Port Chester, New York. Upon testimony taken at a hearing on the motion Judge Dawson found there is not reasonable cause to believe that Local 50 had engaged in an unfair labor practice within the meaning of section 158(b) (4) (C). His opinion is reported in D. C., 127 F.Supp. 534. A motion for reconsideration was promptly made and, upon its denial, notice of appeal was filed. The appellant contends that the trial judge erred in not finding reasonable cause to believe that the appellee has engaged in conduct forbidden by the statutory provisions quoted in footnote 1.

The facts are substantially undisputed. For an understanding of our subsequent discussion the following statement will suffice.[2] On November 15, 1954, as the result of an election conducted by the Board, a labor organization other than Local 50 was certified as the collective bargaining representative of Arnold's employees. Beginning the next day and continuing ever since, Local 50 has caused two pickets to parade in front of the shipping platform of Arnold's premises carrying signs which urge readers thereof not to buy Arnold's products but to buy bakery products made by members of Bakery & Confectionery Workers Union, AFL, and stating that "The working conditions at Arnold's are below Local 50 standards in other baking companies." The picketing has gone on without incident and without effect upon either Arnold's employees or the employees of the trucking companies which pick up Arnold's goods at the shipping platform for delivery to its distributors or customers. There has been no refusal by anyone to use or transport the goods of Arnold, and the picketing has had no effect on its business.

As the appellant concedes, a prerequisite to the granting of a preliminary injunction under 29 U.S.C.A. § 160 (l) is a finding by the district court that there is reasonable cause to believe that a violation of the Act, as charged, has been committed. The section charged to have been violated makes it an unfair labor practice for a labor organization, which Local 50 concededly is, to engage, after another labor organization has been certified as the collective bargaining representative of the employees of an employer, in conduct that satisfies two conditions.[3] The conduct must (1) "induce or encourage the employees of any employer to engage in, a strike or a concerted refusal * * * to use * * * transport * * * or work on any goods" where (2) "the object" of such conduct is "forcing or requiring" the employer to recognize or bargain with the non-certified labor organization. To prove violation of condition (1) Local 50 must be shown to have encouraged the employees of Arnold to strike or refuse to work on goods, or to

1. "§ 158. Unfair labor practices

* * * * *

"(b) It shall be an unfair labor practice for a labor organization or its agents—

* * * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: * * * (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;. * * *."

2. Additional facts are stated in Judge Dawson's opinion, D.C., 127 F.Supp. 534.

3. The section is quoted in footnote 1.

have encouraged employees of the truck-ing companies to engage in a concerted refusal to transport Arnold's goods from the shipping platform to its distributors or customers.[4] The appellant argues that picketing "inherently encourages" workers not to work behind the picket line, and that it must be "presumed" that the appellee intended such conse-quences because one "is held to intend the foreseeable consequences of his con-duct", citing Radio Officers Union v. N. L.R.B., 347 U.S. 17, 45, 74 S.Ct. 323, 98 L.Ed. 455. This argument might be per-suasive if the picketing had had any con-sequences. It did not. No employee of Arnold's refused to cross the picket line or to cease work. If the appellee is to be "presumed" to intend the conse-quences which follow from its conduct, the inference to be drawn is that Local 50 did *not* intend to influence the em-ployees of Arnold to cease work. Simi-larly as to the drivers of the contract truck companies. No driver refused to cross the picket line or to transport Ar-nold's goods. The trucks were operated by members of AFL unions affiliated with the appellee. Had appellee intend-ed to induce the drivers to engage in a concerted refusal to transport Arnold's bread, an effective means to accomplish it was available through action by these affiliated unions. But the testimony does not even suggest that any effort was made to induce them to act. Nor was any threat made or inducement offered to any employee of Arnold or of any other employer. In this respect the case at bar differs from the authorities re-lied upon by the appellant.

We are not prepared to hold that all post-certification picketing is forbidden. Subsection (c) of § 158 pro-vides:

"The expressing of any views, ar-gument, or opinion, or the dissem-ination thereof, whether in written,

printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or prom-ise of benefit."

Ostensibly the signs which the two pickets carried were intended to dis-suade customers from buying Arnold's bread. The district court expressed skepticism, which we share, as to wheth-er this was their real purpose, since no customers ever come to Arnold's prem-ises to buy bread and the shipping plat-form is on a back street little traveled by the public. His opinion stated [127 F.Supp. 536] that "[T]he ultimate objec-tive of the picketing is to bring about a situation where Local 50 will be recog-nized as the bargaining representative of the employees" of Arnold. However, we do not understand this to be a finding that "an object" of the picketing was "forcing or requiring" the employer to recognize Local 50 as the bargaining rep-resentative of the employees, which is the object forbidden by clause (C). In so far as the picketing was intended to influence Arnold's employees it was merely propaganda for the AFL union, which might result in diminishing mem-bership in the certified union so that Lo-cal 50 would get a majority when anoth-er election should be held. We do not understand this to be a prohibited objec-tive. With respect to the employer the only effect of the picketing was, as Judge Dawson said, to cause "some justifiable irritation" and "such conduct, even though irritating, is not illegal." Dur-ing the picketing Local 50 made no de-mand to be recognized as the bargaining representative of Arnold's employees. At the time of the November election it admitted that none of the employees was its member and it did not ask to have its name appear on the ballot. At the in-junction hearing Mr. McIntyre, a busi-

---

4. If otherwise lawful the picketing was not unlawful because it solicited the gen-eral public not to buy Arnold's products, "since the prohibition of § 8(b) (4) [29

U.S.C.A. § 158(b) (4)] does not extend to such solicitation of customers." N.L. R.B. v. Service Trade Chauffeurs, 2 Cir., 191 F.2d 65, 68.

ness agent of Local 50 testified that he could think of nothing Arnold could do that would cause removal of the pickets, since their purpose was merely to inform the public.

In our opinion the district court was well justified in concluding that there is not reasonable cause to believe that the appellee has engaged in or is engaging in an unfair labor practice within the meaning of 29 U.S.C.A. § 158(b) (4) (C). The order is affirmed.