John A. **HULL**, Jr., **Regional Director of the Eighth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner.**

v.

**LOCAL NO. 24, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, and its agents, Kenneth A. Burke, George G. Allshouse and Warren F. Buchwalter, Local 407, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, and its agents, William D. Cassidy and Frank Rubino, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO, Respondents.**

No. 33365.

United States District Court
N. D. Ohio, E. D.
Jan. 31, 1957.

William W. Kapell, Washington. D. C., Philip Fusco, Cleveland, Ohio, for petitioners.

Charles Iden, Akron, Ohio, for Ace Transp. Co.

David R. Wilson, Akron, Ohio, for other employers.

David Previant, Milwaukee, Wis., Robert Knee, Dayton, Ohio, Bruce B. Laybourne, Akron, Ohio, for respondents.

WEICK, District Judge.

The petitioner brings this action for and on behalf of the National Labor Relations Board against the respondent labor unions to obtain injunctive relief in the nature of a preliminary or interlocutory injunction, in aid of the jurisdiction of the Board, and to preserve the status quo until the Board has had an opportunity to pass upon the charges now pending before it.

The petition, which is under oath, alleged that on or about January 14, 1957 A. C. E. Transportation Company, herein referred to as "Ace" filed an amended charge against the unions with the Board and that on January 4, 1957 Max Rabl, Paul Stutler, Inc., Robert E. Roach, Jasper W. Park, Lee Conner, William Charitonovich, Marshall Boggs, R. J. Morgan, Hughey McDonald and W. L. Day filed separate charges with the Board against the unions (copies of which are attached thereto) which set forth acts and conduct claimed to have been engaged in by the unions, which if true, would constitute a violation of Section 8(b), subsections 4 (A, B) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158.

The petitioner alleged that he has investigated the amended charge and the separate charges and has reasonable cause to believe that they are true and that a complaint of the Board based thereon should issue against the unions.

Upon the filing of the complaint in this Court, an order to show cause was issued and served upon Local No. 24 and its agents Kenneth A. Burke, George G. Allshouse and Warren F. Buchwalter, who appeared in open court with counsel. By agreement of all counsel the case proceeded against said respondents and was continued until a later date with respect to the remaining respondents.

Counsel for the respondents have been very co-operative in the stipulation of facts which are not substantially in dispute.

At the hearing counsel for the respondent in an oral answer to the petition admitted Paragraphs 1, 2, 3, 4 and 5 of the petition; he denied the first paragraph of (6), admitted 6(a), 6(b), 6(c), 6(d) except employees, 6(f) first sentence admitted, second sentence denied and denied the remaining paragraphs of the complaint.

Later the second sentence in 6(f) was admitted.

The paragraphs of the petition which were substantially admitted to be true include the following:

"(c) On or about August 31, 1956, respondent Local 24 demanded that Max Rabl recognize it as the collective bargaining representative for his drivers

operating his equipment in the service of certified carriers and that Rabl enter into a collective bargaining agreement with respondent Local 24 fixing the wages, hours and other terms and conditions of employment of said employees. Max Rabl refused to comply with the demand of Local 24.

"(d) At no time material herein have respondent unions or any of them, or any other labor organization, been certified as the collective bargaining representative of any of Max Rabl's employees in accordance with the provisions of Section 9 of the Act [29 U.S.C.A. § 159]."

"(f) In furtherance and support of respondent Local 24's demand set forth in subparagraph (c) above, respondents since on or about December 29, 1956, picketed the terminals of Ace located at Akron, Ohio, Cleveland, Ohio, and at its terminals in other states with signs reading: 'Members of Teamsters Local 24 on strike against Max Rabl under lease to A.C.E. Transportation Co., Inc.' In addition, respondents orally requested employees of Ace, Paul Stutler, Inc., Robert E. Roach, Jasper W. Park, Lee Conner, William Charitonovich, Marshall Boggs, R. J. Morgan, Hughey McDonald, W. L. Day, and other employers not to cross their picket lines at Ace's premises to make pickups and deliveries."

The purpose of these activities of the respondent, as claimed by the petitioner, was to induce the employees of Ace and the other tractor owners (charging parties) to engage in strikes or to refuse to perform services with the object of forcing the other tractor owners not to do business with Ace, to force Ace to refrain from doing business with Max Rabl and in the end, thereby, compel Max Rabl to recognize the union as the bargaining agent of his employees although not certified under the provisions of Section 9 of the Act.

It was further stipulated that the operations of Ace had been closed down in excess of 90%. Ace had an income of $6,000,000 a year.

It was further stipulated that there has been picketing at Ace's terminals at all times since the picketing started and irrespective of whether the leased tractors were located in the terminals at the time.

It was further stipulated that at the picket lines either the pickets or the officials of Local 24 orally requested Ace's employees to honor their picketing.

Oral testimony was also offered in support of the petition and by the respondent Local 24 and the case was orally argued to the Court. Petitioner submitted a trial memorandum and the respondent has replied thereto in a six page letter received by the Court after argument.

The respondent contends that the District Court ought not to be a rubber stamp for the National Labor Relations Board. The fact that no temporary restraining order was issued in this case and that full opportunity has been given to all parties to be heard and to present and argue their respective sides of the case in open court which have been given careful consideration, should at least be some indication that the District Court does not rubber stamp the National Labor Relations Board or any other Government agency.

This is not, however, a hearing on the merits of the case. The National Labor Relations Board has been vested by Congress with exclusive jurisdiction to determine whether the activities of the respondent here complained of constitute unfair labor practices subject, of course, to review by the Court of Appeals and the Supreme Court. All this Court can do is to act in aid of the jurisdiction of the Board and preserve the status quo so that the Board will have something to hear.

In this proceeding, the Court is not obliged to find that the charges against the unions are in fact true.

All that this Court is required to do is to determine whether reasonable ground exists to believe that the unions are violating the Act. 29 U.S.C.A. §

160; Douds v. Local No. 50, Bakery & Confectionery Workers International Union, 2 Cir., 1955, 224 F.2d 49; Douds v. International Brotherhood of Teamsters, etc., D.C.S.D.N.Y.1956, 139 F. Supp. 702.

In Le Bus v. General Truck Drivers, etc., D.C.E.D.La.1956, 141 F.Supp. 673, 677 the Court held:

"It may well be, as respondents contend, that these facts do not demonstrate a violation of subsection (4) (A) and (B) of Section 8(b) of the Act. But it is not necessary for this court to make that determination. Since the facts here clearly demonstrate that there is reasonable cause to believe that a violation of the Act may have been committed, it is the duty of this court to maintain the status quo by enjoining the questioned activity until its legality can be definitively passed on by the exercise of the expertise of the National Labor Relations Board. It is for the Board to determine, after a full hearing, whether the objectives of the union's secondary activity are illegal under the Act. This court's statutory authority is exhausted when it finds, as it does, that on the showing made here, the evidence points in the direction of illegality."

The case at bar involves the question whether or not a labor union, which has a dispute with the owner of motor tractors, has the right to picket the terminals and place of business of an interstate common carrier which leased the tractors from such owner to haul its trailers in its business which it conducted in its name under license from the Interstate Commerce Commission.

There can be no question that the union had the right to picket the place of business of Max Rabl.

Here, the picketing was directed principally at the place of business of Ace.

Here, the activities complained of did not involve merely a display of banners to indicate a labor dispute. They included "persuasion" by the pickets and union officials of the carriers' employees, who were also members of the same union, to honor the picket line. The place of business of the primary employer was for all practical purposes neglected by the pickets.

The result has been that the Ace's business, which amounted to about $6,000,000 annually, was closed down by more than 90% as a result of such activities.

The picketing has been carried on at the terminals of Ace in Akron and elsewhere at all times and irrespective of whether or not any leased equipment was at the time located therein.

Ace was an Ohio corporation engaged as a common carrier of freight with its principal office at Akron. It operated in its own name under licenses from the Interstate Commerce Commission. It employed about 350 people including drivers, terminal employees and office workers. It was engaged in an interstate transportation business operating in Ohio, New Jersey, Connecticut and Massachusetts. It had terminal facilities in Akron, Cleveland, North Bergen, New Jersey, Milford, Connecticut and Boston, Massachusetts. It owned a fleet of tractors and trailers consisting of about 250 trailers and 160 tractors. It leased about 90 tractors, including drivers of which 19 were furnished to it by Max Rabl and the remainder by the other persons who filed charges against the respondent. About 30% of Ace's long distance hauling was handled by its own tractor-trailers and truck drivers.

Ace has contracts with the respondent unions as bargaining agents for its own truck drivers and terminal employees in Akron and Cleveland.

The lease by Rabl to Ace was in writing. He not only furnished the tractors, but also the drivers. He agreed to maintain the equipment and to furnish oil and gas and the licenses. He hired the drivers and had the right of discharging them. He paid all social se-

curity, old age pensions, withholding tax and unemployment insurance and workman's compensation.

Rabl was to be paid on a per ton basis in accordance with a published schedule.

The lease agreement provided:

"The relationship herein created is that of independent contractor and not that of employer and employee. Operator [Rabl] is a contractor only and not the employee of carrier [Ace]."

While this contractual provision may not have been binding on the Court, it at least indicates how the parties dealing at arms length regarded their status.

Rabl had his place of business in Akron at 1946 Trapas Avenue about 5½ miles from Ace's terminal. He owned about 6 acres of land upon which was a building where he repaired his tractors and also operated a machine shop. He employed two mechanics to repair his tractors, and one girl. Rabl owned 21 tractors of which 19 were leased to Ace and two to Interstate Motor Trucking Co.

The respondent probably felt that picketing Rabl at his six acre tract did not adequately advertise its dispute with him to the public. If ambulatory picketing was desirable, it would require following the tractors on their interstate journeys in which they were engaged most of the time. These were operated in the name and under the licenses of Ace and hauled the trailers owned and loaded by Ace.

The picketing commenced at the terminals of Ace in Akron, Cleveland and other locations on or about December 29, 1956 and has continued ever since. Shortly after the first of the year Rabl's place of business was picketed for just a few days.

The operations of the other charging parties employers) are substantially the same as Rabl. Respondent subsequently called a strike of their employees because of a claim that it was "picking" on Rabl.

The respondent contends that this is a case of first impression and that the issues involved have never been passed upon by the National Labor Relations Board. It argues that under such circumstances the Court ought not to grant injunctive relief. It claims that the relationship between Rabl and Ace is so intertwined as to be incapable of separation and that the picketing of Ace is primary and not secondary. The relationship between the tractor-owner, lessor and the lessee-carrier in the trucking industry is not new and has been before the courts on many previous occasions.

In United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, the Supreme Court held that the tractor owner was an independent contractor. To the same effect is the decision of our Court of Appeals in United States v. Mutual Trucking Co., 6 Cir., 141 F.2d 655 and the Court of Appeals for the Seventh Circuit in National Labor Relations Board v. Chauffeurs, etc., 7 Cir., 1954, 212 F.2d 216.

While the facts in the case at bar may not be in all particulars identical with those in the cited cases, the reasoning adopted by the courts is persuasive.

The fact that this case may be one of first impression so far as the National Labor Relations Board is concerned is no reason why injunctive relief should be here denied if reasonable grounds exist for believing that the Act has been violated.

Granted that the respondent is desirous of improving the lot of the truck driver, there certainly is no valid reason why the National Labor Relations Board should not be afforded an opportunity to hear the charges in an orderly manner without substantial damage being inflicted upon Ace and the other employers while it is doing so.

The Court could not help but be impressed with the fact that the operations of Ace, as a result of the claimed activities of the respondent, have been

cut down more than 90%. With an annual business of $6,000,000 this could develop into a serious loss.

It would certainly not be preserving the status quo to permit the damage to go on with the consequent injury to the business of Ace.

If the Board decides in favor of the union, it can then resume its activities. There was no showing that the respondent would be damaged if not permitted to indulge in the activities complained of.

The respondent argues that the damage to Ace, caused by its activities, is damnum absque injuria.

This would be true if the picketing and other activities of the respondent were lawful but would not follow if they constituted a secondary boycott as petitioner claims.

Respondent relies on the case of Sales Drivers, etc. v. National Labor Relations Board, 97 U.S.App.D.C. 173, 229 F.2d 514 and National Labor Relations Board v. General Drivers, etc., 5 Cir., 225 F.2d 205.

It is sufficient to say that these cases did not involve activities of the type present in the case at bar.

In Sales Drivers, etc. v. National Labor Relations Board, supra, the court said:

"Except for displaying the picket signs, the Union's pickets did not communicate with any employees working at the projects." Id. 229 F.2d 514, 515.

In National Labor Relations Board v. General Drivers, etc., supra, the court said in speaking of the record in that case:

"It is significantly devoid of any probative proof in support of the allegations in the complaint that respondent by 'picketing * * * orders, instructions, directions, appeals and other means' induced and encouraged employees of the neutral employers to strike * * *." Id. 225 F.2d 210.

In neither of the cited cases was there any substantial interference with the business of the neutral employers.

The evidence here is sufficient to afford reasonable grounds for believing that the activities of the respondent are in violation of the Act.

It is, therefore, the clear duty of the Court to grant the relief prayed for. Le Bus v. General Drivers, etc., supra; National Labor Relations Board v. Chauffeurs, etc., supra; Local 74, United Brotherhood of Carpenters & Joiners of America, etc., v. National Labor Relations Board, 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.

An order may be prepared granting an injunction as prayed for against respondent Local No. 24 and its agents and continuing the case as to the remaining respondents until the further order of the Court.

This memorandum is adopted as a finding of fact and conclusions of law.