Edward G. Baker, J.
Plaintiff, a manufacturer of knit goods, brings this action to enjoin and restrain defendant union from picketing plaintiff’s premises, and for damages.
In or about August, 1954, Local 1499, Retail Clerks International Assn., A.F.L., was certified by the National Labor Relations Board as the exclusive bargaining representative of plaintiff’s employees. Thereafter, plaintiff entered into a collective bargaining agreement with said union, which, by its terms, was to expire on August 31, 1956. In May, 1956, one Treitler, a representative of Local 1499, and one De Leo, a representative of the defendant union, called on James Landro, the president of plaintiff, at the latter’s office. Treitler stated that Local 1499 did not intend to renew its contract with plain *604 tiff and that the defendant union would “ take over ”. De Leo demanded that plaintiff enter into a collective bargaining agreement with defendant union, in default of which plaintiff would be put out of business.
In June, 1956, Treitler and De Leo returned to plaintiff’s plant. The demands and threats were repeated. Treitler delivered to Landro 'a letter which reads as follows:
‘ ‘ American Federation oe Labor Local 1499, B.O.I.A.
Affiliated with Central Trades & Labor Council 250 West 57th Street, Suite 1222, New York 19, N. Y.
William Bennett Fannie Berlow
President Sec’y-Treas.
June 7, 1956
Mr. James Landro, Pres.
James Knitting Mills, Inc.
2887 Atlantic Avenue Brooklyn, N. Y.
Dear Sir:
This is to notify you that we do not intend to renew our agreement entered into with James Knitting Mills, Inc. and Local 1499, on August 24, 1954, which expires this year, August 31, 1956.
We have made this decision because the Retail Clerks International Association does not have jurisdiction over this type of shop.
A copy of this letter is being forwarded to the Knitgoods Workers’ Union, Local 155, I.L.G.W.U.
Very truly yours,
Ben Treitler,
Business Agent.”
De Leo again demanded a contract, and stated that, unless one were signed, plaintiff’s premises would be picketed.
The attempt to coerce plaintiff into signing a collective bargaining agreement with defendant union (which represented none of plaintiff’s employees) was unsuccessful. Landro refused to capitulate, stating that his contract with Local 1499 was still in force and effect, and that the question of representation was a matter for his employees to decide.
On June 18,1956, two months prior to the expiration of plaintiff’s contract with Local 1499, defendant commenced picketing plaintiff’s establishment. The picketing has continued, except *605 for a period of 10 days, during which period it was temporarily enjoined. As a result, plaintiff has lost the business of two of its largest suppliers. The number of its employees has been reduced from 45 to 7. Concededly, defendant union does not now represent nor has it ever represented any of plaintiff’s employees.
On or about June 7, 1956, Local 710, Production, Service Employees Union, United Industrial Unions, filed with the National Labor Relations Board a petition for certification. On June 18, it entered into a consent election agreement with plaintiff. An election was conducted on June 29, and Local 710 was chosen, by a vote of 38 to 1, as the collective bargaining representative of the employees of plaintiff. It was so certified by the board on July 10, 1956. Thereafter, on July 25, 1956, plaintiff entered into a collective bargaining contract with said certified union, expiring August 1, 1958.
Following the certification of Local 710, plaintiff filed with the board an unfair labor practice charge against the defendant union, alleging that the union’s activities constituted an unfair labor practice within the meaning of section 8 (subd. [b], par. [4], cl. [C]; U. S. Code, tit. 29, § 158) of the Labor Management Relations Act, as amended. Pursuant to the provisions of the act, the regional director of the board filed in the United States District Court his petition for a temporary injunction against the picketing pending final determination of the controversy by the board.
On February 1, 1957, the District Court issued its order directing that, pending such final adjudication, the picketing, insofar as it was violative of section 8 (subd. [b], par. [4], cl. [C]) of the act, be enjoined. The order further provided that ‘ ‘ nothing herein contained shall be construed to prohibit peaceful picketing by respondent [union] of the premises of [plaintiff] including the carrying of signs or banners containing statements such as those used by respondent since shortly after July 10, 1955.” The court noted in its opinion that the signs carried by the pickets after that date were mere appeals to the employees of plaintiff to join the defendant union, and held that ‘ ‘ the carrying of such signs did not extend beyond the activity expressly permitted by Subsection (c) of Section 8 of the Act ’ ’ and further noted ‘ ‘ The Act does not prohibit post-certification picketing ” (citing Bonds v. Local 50, Bakery & Confectionary Workers Int. Union, A.F.L., 224 F. 2d 49).
While the application for a temporary injunction was still under advisement by the District Court, and prior to the date of the order above referred to, the union’s complaint came on *606 for hearing before a trial examiner of the National Labor Relations Board. The examiner held (contrary to the decision of the Federal courts [see e.g. Douds v. Local 50, supra]) that the picketing constituted an unfair labor practice within the meaning of the Federal act, and, on December 31, 1956, he issued-his report and recommendation that the board direct the union to cease and desist. The matter has not yet been decided by the board and is still pending before it.
The testimony of plaintiff’s witness, Landro, stands uncontradicted. It indicates, clearly, that the purpose of the picketing was to coerce plaintiff into recognizing and entering into a contract with defendant union which represented none of plaintiff’s employees. The picketing has continued in spite of proper and lawful certification by the board of another union as the sole collective bargaining representative of plaintiff’s employees. There is not the slightest suggestion in the evidence that the employees’ nearly unanimous choice of Local 710 as their bargaining representative was brought about by any pressure, persuasion or collusion on the part of plaintiff.
Under the Constitution and Labor Law of this State, the picketing of plaintiff’s establishment by the defendant, under the circumstances and for the purposes disclosed in the proof, however innocuous the legend on the pickets’ placards, was and is unlawful (Goodwins, Inc. v. Hagedorn, 303 N. Y. 300).
This court, however, is without jurisdiction to grant the relief sought. Plaintiff is engaged in interstate commerce within the meaning of the National Labor Relations Act. The National Labor Relations Board has asserted and assumed jurisdiction in the very controversy with which we are here concerned. The report of the trial examiner who recommended, upon the basis of the fact of the picketing with unlawful purpose alone, that the board issue its cease and desist order, is still under advisement by the board.
As was pointed out in Garner v. Teamsters Union (346 U. S. 485) exclusive primary jurisdiction to pass on the union’s picketing is delegated by the Taft-Hartley Act to the National Labor Relations Board; or, put another way, the question whether the picketing here involved is an unfair labor practice or is a protected activity under the Federal act is a matter exclusively within the jurisdiction of the board to determine in the first instance. And in Weber v. Anheuser-Busch (348 U. S. 468, 481) the court wrote: “But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited *607 by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state Court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance.”
Whatever doubts with respect to State jurisdiction, in situations such as that presented here, may have remained after the decision in Garner and Weber, seem to this court to have been resolved by the United States Supreme Court’s unanimous reversal of the decision of the Supreme Court of Idaho in J. J. Newberry Co. v. Retail Clerks Int. Assn., Local No. 560 (298 P. 2d 375 [Idaho]). In that case it was held by the Idaho court that the activities and conduct of the union there complained of [the purpose of the picketing being to unlawfully intimidate and coerce the employer into an agreement with the union] had neither been approved nor prohibited by the National Labor Relations Act and were not within the categories covered therein. The court affirmed the judgment of the trial court enjoining the picketing. The United States Supreme Court reversed, in a Per Curiam opinion, citing Garner and Weber (Retail Clerks Assn. v. Newberry Co., 352 U. S. 987).
In Arnold Bakers v. Strauss, decided by the Appellate Division in this department in June, 1956 (1 A D 2d 604), Murphy, J., for the unanimous court, wrote at page 607: “ Section 158 of the labor act is pervasive as to contrasting unfair practices by an employer and by a union. Unless conduct complained of is within the scope of the unfair labor practices therein enumerated, it is to be deemed lawful (Garner v. Teamsters Union, 346 U. S. 485; Weber v. Anheuser-Busch, 348 U. S. 468). Thus, persuasion by a union of its own members to refrain from delivering trailers as part of the work assigned to them by their employers is conduct to be weighed by the National Labor Relations Board in accordance with the provisions of the labor act (Teamsters Union v. New York, N. H. & H. R. Co., 350 U. S. 155). Authority to the contrary holding that a State has supplementary jurisdiction where an asserted unfair practice is not to be found in the labor act, must be deemed overruled pro tanto (e.g., Goodwins, Inc. v. Hagedorn, 303 N. Y. 300). When the subject matter is within the scope of that act a State may assume jurisdiction only in accord with its traditional power to curb conduct which is intrinsically unlawful, e,g., mass picketing and violence (Allen-Bradley Local v. Board, 315 U. S. 740) and unannounced and malicious work stoppages (Auto, Workers v. Wisconsin Bd., 336 U. S. 245)."
*608 The court concludes that it is without jurisdiction to grant the relief requested, and judgment is directed dismissing the complaint, without costs. The above constitutes the decision of the court in accordance with section 440 of the Civil Practice Act.