Samuel W. Eager, J.
This action is brought to restrain Local 143 of the International Ladies’ Gfarment Workers’ Union, an unincorporated labor organization, and Louis Reiff, its manager, from picketing plaintiff’s place of business.
Plaintiff is an independent dress manufacturing contractor, with place of business at Mount Vernon, N. Y., engaged primarily in the working upon and finishing of garments for a jobber, Joanette Juniors, Inc. (hereinafter referred to as Joanette), which has its place of business in New York City. Joanette plans for and designs dresses and garments which it believes it will be able to wholesale to chain stores and other dealers. It purchases necessary goods, cuts them to pattern and then contracts out the work of making the dresses and garments. For 13 years, the plaintiff has been doing work as a contractor for the jobber Joanette. Its truck picks up the cut goods, patterns and designs from Joanette in New York City, and then, for a consideration paid by Joanette, sews, finishes, cleans and presses the garments, and has the same trucked back to Joanette. Title to the goods at all times remains in Joanette. All of plaintiff’s work is done locally and within the State. But it appears that the finished garments are sold and delivered by Joanette throughout the United States.
The plaintiff employs from 30 to 40 employees in the conduct of its business, and not one of its employees are members of •the defendant union. The plaintiff operates a nonunion shop. Joanette is also a nonunion firm.
*39 On February 28, 1958, the collective agreements then subsisting with the International Ladies’ Garment "Workers’ Union in the dress industry in the New York Metropolitan area did expire, and a general strike was called and held in the industry commencing March 5, 1958. On the next day, March 6, Local 143 placed a picket line in front of plaintiff’s factory. The pickets then carried signs which read, “ Workers of B.C. Mfg. Strike for Union Agreement.” Shortly thereafter new collective agreements were agreed upon between the union and the union shops in the territory, and the general strike in the dress industry was called off. The picketing of plaintiff’s plant, however, continued. In the meantime, the signs carried by the pickets were changed to read: “ To the workers of B. 0. Manufacturing Co. Inc. Join the Union and strike for better working conditions. Local 143 of I.L.G.W.U.”
The picketing of plaintiff’s factory by the defendant Local 143 continues to date. It has been conducted with abusive and disorderly conduct. The pickets were there in unnecessary numbers with the massing of a crowd in front of plaintiff’s premises on March 6 and on March 7. There has been pushing of certain of plaintiff’s employees during the picketing and from time to time, the pickets have blocked or barred the way of plaintiff’s employees to the doorway of its premises. On March 7, a rock was hurled through the window of plaintiff’s premises by a picket or by someone in sympathy with the picketing. There has been frequent verbal abuse of plaintiff’s employees and from time to time the pickets have made derogatory remarks to the employees concerning Mrs. Micceri who is the president of plaintiff and its plant manager. It is noted that the local police have found it advisable to keep the picket line and the plants under surveillance when the employees go to work and when they leave the premises. While the conditions are not such as to justify an injunction against all picketing, the court has the power to and should act to limit the number of the pickets and restrain future mass picketing, violence and disorderly conduct. (See Allen-Bradley Local No. 1111 v. Board, 315 U. S. 740; Busch Jewelry Co. v. United Retail Employees Union, 281 N. Y. 150, 156; Triangle Finishing Corp. v. Textile Workers Union, 145 N. Y. S. 2d 614; Art Steel Co. v. Velazquez, 280 App. Div. 76; Standard Appliances v. Korman, 111 N. Y. S. 2d 783; Sachs Quality Furniture v. Hensley, 269 App. Div. 264.)
The plaintiff contends that all picketing should be restrained by this court in that it was initiated and is conducted for an *40 unlawful purpose. Admittedly, the picketing is so-called ££ stranger picketing ” in that it is carried on by persons who are not employees but who are ££ strangers ” to the employer. I do find that the primary purpose of this stranger picketing of plaintiff’s place of business is the exertion of pressure upon the plaintiff so that it and its president, Mrs. Micceri, would urge and insist that its employees join the defendant local union. Admittedly, the defendant Reiff (who is manager of Local 143) and his union have been attempting for years to unionize plaintiff’s shop. When the general strike in the industry was called, it was announced by him that ££ we can’t afford to have a single non-union shop in the country.” He frankly testified that from time to time, he tried to get Mrs. Micceri to convince her employees to become members of the union. He said to her, according to his own testimony, that ££ we cannot let just one lonely shop be non-union ’ ’ and he further testified that ,she ,said to him, 11 my employees will do just as I say ’ ’,- and that she could deliver the shop. He and his local union have felt all along that the plaintiff, through Mrs. Micceri, controls whether or not the employees of this shop would join the union. So, the picketing is carried on as a means of coercing the plaintiff and its president, Mrs. Micceri, to take some action in the premises.
The picketing, carried on for the purpose of exerting pressure upon the employer to convert its shop into a union shop constitutes unfair conduct. That picketing for such purpose is unlawful, and is subject to restraint by a tribunal having jurisdiction is clear. (See Wood v. O’Grady, 307 N. Y. 532; Goodwins, Inc., v. Hagedorn, 303 N. Y. 300, 305; Building Service Union v. Gazzam, 339 U. S. 532.) However, on the record here, it is clear that this court should not assume equity jurisdiction to restrain peaceful picketing by defendants on the public street in the absence of proof of damage occasioned thereby. (Kraus & Bros. v. Bergman, 2 N Y 2d 155; Kane v. Walsh, 295 N. Y. 198.) Here, the plaintiff has not established any damage or likelihood of damage, from peaceful picketing. There is no proof of disrupting of or injury to employer and employee relationship; no proof of loss of contracts or business and no proof of difficulty with materials, supplies or deliveries.
Furthermore, a reading of the authorities leads to a holding that this court has been deprived by Federal act of jurisdiction to restrain the defendants from peaceful picketing. The plaintiff works upon goods, a principal part of which is to be the subject of interstate commerce. Therefore, any unfair labor *41 practice affecting plaintiff’s operations would tend to prevent the free flow of goods in interstate commerce and thus tend to obstruct such commerce. The plaintiff’s work is so related to interstate commerce as to render applicable the provisions of the Taft-Hartley Act (U. S. Code, tit. 29, § 151 et seq.) to all unfair labor practices concerning plaintiff and its employees. (See Labor Bd. v. Fainblatt, 306 U. S. 601; Schulte Co. v. Gangi, 328 U. S. 108.) Therefore, generally speaking, the National Labor Relations Board has exclusive jurisdiction in the matter of peaceful organized union activity directed against plaintiff. (Youngdahl v. Rainfair, Inc., 355 U. S. 131.)
It is true that stranger picketing by a union for the purpose of coercing an employer to exert pressure against his employees with respect to union affiliation was, in Goodwins, Inc., v. Hagedorn (303 N. Y. 300, supra) held not an unfair labor practice proscribed by the Federal act. Reasoning and decisions, however, following the later decisions in Garner v. Teamsters Union (346 U. S. 485) and Guss v. Utah Labor Bd. (353 U. S. 1) give indication that the holding of our Court of Appeals in the Goodwins case may not now be followed.[1] (33 N. Y. U. L. Rev. 410; Pleasant Val. Packing Co. v. Talarico, 5 A D 2d 943; Arnold Bakers v. Strauss, 1 A D 2d 604; Channel Master Corp. v. Silverman, 12 Misc 2d 1094; Leathercraft Corp. v. Perry, 11 Misc 2d 391; James Knitting Mills v. Sinensly, 8 Misc 2d 603; Howard Johnson’s Inc. v. Block, 14 Misc 2d 157; Davis v. Silverberg, 14 Misc 2d 744; Wisconsin Employment Relations Bd. v. Chauffeurs, etc. Local 200, 267 Wisc. 356.) The fact that the National Labor Relations Board fails or refuses to take jurisdiction in cases of stranger picketing such as this, where peaceably conducted, is immaterial on the question of State jurisdiction. (Guss v. Utah Labor Bd., supra; Meat Cutters v. Fairlawn Meats, 353 U. S. 20; San Diego Union v. Garmon, 353 U S. 26.) Furthermore, since the decision in the Garner case, it seems clear that, if the picketing here is not within the scope of an unfair labor practice proscribed by the Federal act, then it is to be deemed lawful and the State courts are prohibited from restraining the same. (See op. of Murphy, J., in Arnold Bakers v. Strauss, supra.)
On the record here, the plaintiff is not entitled to judgment restraining all picketing by defendants. The plaintiff is, how *42 ever, entitled to judgment as follows: (a) Restraining the defendants from using more than two pickets at any one time. The defendants took the position at the trial that this was the number now used, and it appears that, in view of the limited street area in front of plaintiff’s premises, two pickets are adequate; and (b) Restraining the defendants and their pickets from in any way interfering with or blocking plaintiff’s employees on ingress to or egress from the premises; and (c) Restraining the defendants and their pickets from using obscene, abusive or threatening language to plaintiff’s officers or employees. The judgment shall be with taxable costs.
This .shall stand as the decision of the court. Settle judgment at Chambers, Middletown, New York, on due notice.

 ‘See, however, decision of the Court of Appeals in Pleasant Val. Packing Co. v. Talarico (5 N Y 2d 40), which decision reverses 5 A D 2d 943 and which decision was handed down after the rendition of the opinion here published.