GOODWINS, INC., et al., Appellants, *v.* FRANK HAGEDORN, as President of Department Store & Variety Store Employees Union, Local 1115A, Retail Clerks International Association, A. F. of L., et al., Respondents, et al., Defendants.

Argued July 11, 1951; decided October 18, 1951.

J. *Norman Lewis* and *James P. Durante* for appellants. I. The New York State Supreme Court has jurisdiction over the subject matter of this action. It is unthinkable that plaintiffs should be denied relief by equity in their struggle against defendants' illegal coercion. (*Matter of Midwest Piping & Supply Co.,* 63 N. L. R. B. 1060; *Matter of Standard Steel Springs Co.,* 80 N. L. R. B. 1082; *National Labor Relations Bd.* v. *National Motor Bearing Co.,* 105 F. 2d 652; *Serval Slide Fasteners* v. *Molfetta,* 188 Misc. 787; *Euclid Candy Co. of N. Y.* v. *Summa,* 174 Misc. 19; *Haber & Fink, Inc.,* v. " *Jones* ", 277 App. Div. 176; *La Manna* v. *O'Grady,* 278 App. Div. 77; *Automobile Drivers & Demonstrators Local Union* v. *Cline,* 339 U. S. 470; *Lincoln Fed. Labor Union* v. *Northwestern Iron & Metal Co.,* 335 U. S. 525; *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Bd.,* 336 U. S. 301.) II. Defendants should be enjoined from the commission of acts in furtherance of their unlawful conspiracy and from the commission of other tortious acts against plaintiffs. (*Rozell* v. *Rozell,* 281 N. Y. 106; *Kujek* v. *Goldman,* 150 N. Y. 176; *Jacobs* v. *Holt,* N. Y. L. J., Mar. 27, 1951, p. 1092, col. 6; *Barile* v. *Fisher,* 197 Misc. 493; *Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79; *Beardsley* v. *Kilmer,* 236 N. Y. 80; *Stuhmer & Co.* v. *Korman,* 241 App. Div. 702, 265 N. Y. 481.) III. The right to carry on a lawful business is a property right which is entitled

to protection by an injunction in the event of unlawful interference. (*Rochette & Parzini Corp.* v. *Campo,* 301 N. Y. 228; *Federal Waste Paper Corp.* v. *Garment Center Capitol,* 268 App. Div. 230; *Dorchy* v. *Kansas,* 272 U. S. 306; *People* v. *Silverman,* 278 N. Y. 670; *Euclid Candy Co.* v. *Scida,* 99 N. Y. S. 2d 817.) IV. There is no labor dispute within the meaning of section 876-a of the Civil Practice Act. (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226; *Dinny & Robbins, Inc.,* v. *Davis,* 290 N. Y. 101, 319 U. S. 774; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150; *Canepa* v. " *John Doe* ", 277 N. Y. 52; *Nash* v. *Mennan,* 275 App. Div. 674.)

*Max Bloom* for respondents. I. The complaint was properly dismissed inasmuch as Special Term did not have jurisdiction over the subject matter of the action and appellants did not have legal capacity to sue. (*Matter of Midwest Piping & Supply Co.,* 63 N. L. R. B. 1060; *Pocahontas Term. Corp.* v. *Portland Bldg. & Constr. Trade Council,* 93 F. Supp. 217; *Amalgamated Utility Workers* v. *Consolidated Edison Co.,* 309 U. S. 261; *Matter of Benedict* [*Limited Editions Club*], 265 App. Div. 518; *Textile Workers Union* v. *Amazon Cotton Mill Co.,* 76 F. Supp. 159; *International Union of United Automobile Workers* v. *O'Brien,* 339 U. S. 454; *Ryan* v. *Simons,* 277 App. Div. 1000, 302 N. Y. 742; *Costaro* v. *Simons,* 302 N. Y. 318; *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.,* 330 U. S. 767; *La Crosse Tel. Corp.* v. *Wisconsin Employment Relations Bd.,* 336 U. S. 18.) II. Section 876-a of the Civil Practice Act precludes issuance of the injunction here sought. (*May's Furs & Ready-to-Wear, Inc.,* v. *Bauer,* 282 N. Y. 331; *Baillis* v. *Fuchs,* 283 N. Y. 133; *Fairfield Bar & Restaurant* v. *Friedman,* 172 Misc. 146; *Bent Steel Sections, Inc.,* v. *Doe,* 170 Misc. 736; *International Union of United Automobile Workers* v. *O'Brien,* 339 U. S. 454; *Matter of Levinsohn Corp.* [*Cloak, etc., Union*], 299 N. Y. 454; *Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union,* 288 N. Y. 188; *Stalban* v. *Friedman,* 259 App. Div. 520; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Canepa* v. " *John Doe* ", 277 N. Y. 52; *Busch Jewelry Co.* v. *United Retail Employees' Union,* 281 N. Y. 150.

LOUGHRAN, Ch. J. The plaintiffs are domestic corporations. We shall call them the plaintiff employers. Though three labor organizations were named as defendants, only the defendant Department Store & Variety Store Employees Union, Local 1115A, appeared and defended the action. It will be called the defendant union.

The action was commenced in the New York Supreme Court for a judgment that would enjoin picketing by the defendant union of a store of the plaintiff employers located on Fulton Street in Brooklyn. After trial before an Official Referee, the complaint was dismissed. The Appellate Division affirmed by a divided vote and the plaintiff employers then brought the case here by an appeal taken as of right.

The dismissal of the complaint was not upon the merits but went upon the ground that the New York Supreme Court lacked jurisdiction over the subject matter and that any remedy of the plaintiff employers was to be had in the Federal courts or administrative agencies. Since the complaint has been dismissed without consideration of the merits of the controversy, we assume the truth of the evidence offered by the plaintiff employers.

There is not and there has not been any strike at their Fulton Street store nor have their employees selected any union as collective bargaining agent. Indeed representation proceedings looking to certification of such an agent have been pending before the National Labor Relations Board to whose jurisdiction the plaintiff employers are subject since they are engaged in interstate commerce. Nevertheless, the defendant union is picketing the plaintiff employers' Brooklyn store with the avowed object of forcing the plaintiff employers forthwith to recognize the defendant union as sole collective bargaining agent despite the competing claims of a rival labor organization to represent the same employees.

The picketing in question is unlawful under the law of this State. Section 17 of article I of our State Constitution says that " Employees shall have the right to organize and to bargain collectively through representatives of their own choosing." The public policy thus declared by our State Constitution has been implemented by statute. Section 703 of the New York Labor Law says: " Employees shall have the right * * *

to bargain collectively through representatives of their own choosing * * * free from interference, restraint, or coercion of employers ''. Moreover, subdivision 3 of section 704 of the same statute denounces as an unfair labor practice an employer's attempt by any means '' To dominate or interfere with the formation, existence, or administration of any employee organization or association, agency or plan ''.

The Federal Labor Management Relations Act of 1947 contains like provisions. Section 7 thereof (U. S. Code, tit. 29, § 157) says: '' Employees shall have the right to self-organization * * * to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining ''. Subdivision (a) of section 8 of the same statute (U. S. Code, tit. 29, § 158) says: '' It shall be an unfair labor practice for an employer — (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; (2) to dominate or interfere with the formation or administration of any labor organization ''.

In the face of the above legislation there is no denying that it would be unlawful for the plaintiff employers to yield to a demand that they recognize the defendant union instead of some rival labor organization as the exclusive collective bargaining agent for the employees of the plaintiff employers in advance of a certification by the National Labor Relations Board in the pending representation proceeding. Moreover, this conclusion seems to us to be fortified by a stipulation whereby, with the approval of the National Labor Relations Board, the plaintiff employers have agreed not to commit any of the unfair labor practices that have been imputed to them by union officials.

In short, the defendant union is subjecting the plaintiff employers to economic pressure and is thereby injuring their business without justification in law. Coercion of that kind is clearly unlawful (*Dorchy* v. *Kansas,* 272 U. S. 306, 311) and in our judgment can be enjoined by the courts of this State. Section 876-a of the New York Civil Practice Act does not bar injunctive relief in a case where, as here, no lawful labor objective is sought by the defendant union (*American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226, 231; see *Florsheim Shoe Store Co.* v. *Shoe Salesmen's Union,* 288 N. Y. 188).

Furthermore, no principle of due process stands in the way of such an exercise of equity jurisdiction (*Building Service Employees Int. Union* v. *Gazzam,* 339 U. S. 532, 538-539).

Nor does the Federal Labor Management Relations Act (as we see it) disable our State courts from acting in the circumstances of this case. For one thing, the activity of the defendant union is not within any of the categories of union unfair labor practices denounced in subdivision (b) of section 8 of the Federal statute (U. S. Code, tit. 29, § 158). The provisions of the Federal statute that come closest to touching this case are contained in paragraph (4) of subdivision (b) of section 8 which says that it shall be an unfair labor practice for a labor union or its agents " to engage in, or to induce or encourage the employees of any employer to engage in, a strike * * * where an object thereof is: * * * (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees * * *; (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees ". The picketing conducted by the defendant union does not fall within the foregoing definitions of unfair labor practices under the Federal act because, as we have already noticed, no strike is involved in this case and no union has yet been certified as exclusive collective bargaining agent for the employees in question. Thus this aspect of the case presents no question of conflict with the Federal statute. In *International Union, U. A. W. A.,* v. *Wisconsin Employment Relations Bd.* (336 U. S. 245), the Supreme Court upheld an order issued by the Wisconsin Employment Relations Board requiring a union to halt its practice of calling work stoppages against an employer during working hours. In that case, the Supreme Court said (p. 253): " Congress made in the National Labor Relations Act no express delegation of power to the Board to permit or forbid this particular union conduct, from which an exclusion of state power could be implied. The Labor Management Relations Act declared it to be an unfair labor practice for a union to induce or engage in a strike or concerted refusal to work

where an object thereof is any of certain enumerated ones. § 8 (b) (4), 61 Stat. 140, 141; 29 U. S. C. § 158 (b) (4). Nevertheless the conduct here described is not forbidden by this Act and no proceeding is authorized by which the Federal Board may deal with it in any manner." Again, in *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Bd.* (336 U. S. 301), the Supreme Court in upholding an order of the Wisconsin board with respect to an employer engaged in interstate commerce had this to say (p. 305): " In seeking to show that the Wisconsin Board had no power to make the contested orders, petitioner points first to § 10 (a) of the National Labor Relations Act * * *. It argues that the grant to the National Labor Relations Board of ' exclusive ' power to prevent ' any unfair labor practice ' thereby displaced State power to deal with such practices, provided of course that the practice was one affecting commerce. But this argument implies two equally untenable assumptions. One requires disregard of the parenthetical phrase '(listed in section 8)'; the other depends upon attaching to the section as it stands, the clause ' and no other agency shall have power to prevent unfair labor practices not listed in section 8.' "

Nor, of course, is the conduct of the defendant union a concerted activity that is protected by the Federal statute (cf. *International Union of United Automobile Workers* v. *O'Brien,* 339 U. S. 454; *Amalgamated Assn. of St., Elec. Ry. & Motor Coach Employees* v. *Wisconsin Employment Relations Bd.,* 340 U. S. 383). For the object of the picketing is to coerce the employer into committing an act which is denounced as an employer unfair labor practice under subdivision (a) of section 8 of the act. This kind of concerted activity cannot be supposed to be entitled to protection under section 7 of the act.

Our conclusion is that the acts of the defendant union here complained of by the plaintiff employers, if established by proof (1) would constitute an actionable tort under the law of this State entitling the employer to injunctive relief; (2) are not within the provisions of the National Labor Relations Act; and (3) are not such concerted union activity as is protected thereby. Even so, in the absence of any findings establishing the right of the plaintiff employers to the relief sought in the complaint,

a new trial must be ordered. Hence we remit the case for a decision on the merits.

The judgments should be reversed and a new trial granted, with costs to abide the event.

FROESSEL, J. (concurring). We are all agreed that the Labor Management Relations Act of 1947 (Taft-Hartley Act) is silent on the specific subject of stranger picketing by a labor organization as an unfair labor practice. A minority is of the opinion that because of its close relation to activities proscribed by that statute (U. S. Code, tit. 29, § 158, subd. [b]) the picketing here complained of falls within the area of proscription. Had the sponsors of the Taft-Hartley Act and the Congress so intended, surely they would have made their purpose manifest, for plain language was readily available.

In my view the Taft-Hartley Act does not deprive the Supreme Court of this State of jurisdiction of the subject matter, which is " governable by the State or it is entirely ungoverned " (International Union, U. A. W. A., v. Wisconsin Employment Relations Bd., 336 U. S. 245, 254). Accordingly, I concur with the Chief Judge for reversal and remission for decision on the merits.

DYE, J. (dissenting). I dissent and vote for affirmance. The complaint was properly dismissed for lack of jurisdiction of the subject matter. When the employer alleged that it was engaged in interstate commerce the controversy was forthwith brought within the exclusive province of the National Labor Management Relations Act of 1947 (Taft-Hartley Act), (U. S. Code, tit. 29, ch. 7, § 141 et seq.). The jurisdictional effect of this admission is not diminished by the circumstance that none of its employees are members of the defendant union and none are on strike or that the union has not been recognized as their bargaining agent. That they have not been so recognized is no fault of the union as a proceeding to determine the appropriate employee representative is now pending undetermined before the National Labor Relations Board. It also appears that throughout the picketing has been peaceful and orderly; no violence has been involved; that there has been no secondary boycott and none claimed, and that the signs used

by the pickets have been neither fraudulent nor misleading and at no time has the employer complained that the police protection as furnished, has been inadequate.

There is no longer any doubt that Congress has pre-empted the field of labor relations affecting interstate commerce, and has conferred on the National Labor Relations Board the exclusive right to pass upon unfair labor practice within that sphere whenever the State statute is in conflict with the Federal statute (*Amalgamated Assn. of St., Elec. Ry. & Motor Coach Employees* v. *Wisconsin Employment Relations Bd.,* 340 U. S. 383, revg. 257 Wis. 43; *International Union of United Automobile Workers* v. *O'Brien,* 339 U. S. 454, revg. 325 Mich. 250) and by the same reasoning when the State and Federal statutes are substantially similar *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.,* 330 U. S. 767, revg. 295 N. Y. 601), and which principle we have recognized and recently applied (*Costaro* v. *Simons,* 302 N. Y. 318, revg. 277 App. Div. 773; *Ryan* v. *Simons,* 277 App. Div. 1000, affd. 302 N. Y. 742).

It may not reasonably be assumed that because the National Labor Relations Act, as amended in 1947, is silent on the issue of stranger picketing as an unfair union practice that the Congress left this phase of labor management relations to the regulation and control of the State, while retaining jurisdiction over the right to strike. The silence is accounted for — the Congress actually considered the matter by striking down an affirmative proposal that would have made " any strike or other concerted interference with an employer's operations " — to compel an employer to recognize for collective bargaining a representative not certified — as an unfair labor practice (Legislative History Labor Management Relations Act, 1947, Vol. I, 428; Vol. II, 1007). Silence under such circumstances is not tantamount to creating an exception in a field otherwise pre-empted by the Congress. Whether or not stranger picketing as practiced here in a peaceful and orderly manner without violence, fraud or misleading representation constitutes an unfair union practice is an issue for determination by the National Labor Relations Board which has exclusive jurisdiction to investigate, determine and prevent (Labor Management Relations Act, 1947, § 10).

The judgment appealed from should be affirmed, with costs.

FULD, J. (dissenting). I concur for affirmance for the reasons stated below.

In the case before us, the union activity complained of — even assuming that it is not the precise conduct denominated an unfair labor practice by the Labor Management Relations Act of 1947 (the Taft-Hartley Act) — is so closely related to the activities proscribed by that statute (§ 8, subd. [b], pars. [1], [2], [4], cls. [B], [C]), that it must be regarded as within that "peripheral area * * * into which the states may not intrude without federal authorization." (Cox and Seidman, Federalism and Labor Relations, 64 Harv. L. Rev. 211, 223.) Certainly, Congress could not have intended to differentiate between a case involving "a strike" and one involving "picketing," insofar as jurisdiction is concerned. In other words, if exclusive jurisdiction to deal with "a strike" is, by clause (B) of paragraph (4) of subdivision (b) of section 8, vested in the federal government — and of that there can be no doubt — it would be startling to learn that Congress relegated to the states the intimately related subject of "picketing."

Our problem is not to determine whether the employer, plaintiffs herein, may or may not succeed before the National Labor Relations Board and obtain redress from that body, but, rather, whether Congress has pre-empted for federal regulation the conduct and activities of the union about which complaint is made. On that score, it is clear that Congress has manifested a design to formulate a general policy in that sphere of labor management relations concerned with unfair labor practices and has made comprehensive regulations in that field. And, since that is so, there is no place for the application of state law or policy or for the exercise of state jurisdiction, even though the precise activity complained of may not be specifically covered by Congressional provision. (See *Amalgamated Assn. of St., Elec. Ry. & Motor Coach Employees* v. *Wisconsin Employment Relations Bd.*, 340 U. S. 383; *Plankinton Packing Co.* v. *Wisconsin Employment Relations Bd.*, 338 U. S. 953; *La Crosse Tel. Corp.* v. *Wisconsin Employment Relations Bd.*, 336 U. S. 18; *Bethlehem Steel Co.* v. *New York State Labor Relations Bd.*, 330 U. S. 767, 773–774; *Costaro* v. *Simons*, 302 N. Y. 318; *Ryan* v. *Simons*, 302 N. Y. 741; Cox and Seidman, *op. cit.*, 64 Harv. L. Rev. 211, particularly p. 237; Feldblum, Some Aspects of Minor-

ity Union Picketing in New York, 20 Fordham L. Rev. 176, 196–197; but cf. *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Bd.,* 336 U. S. 301.) Or, to phrase it a bit differently, once it appears that Congress has pre-empted certain conduct in the field of unfair labor practices, state tribunals have no jurisdiction and " state laws have no application. They cannot be applied in coincidence with, as complementary to or as in opposition to, federal enactments which disclose the intention of Congress to enter a field of regulation that is within its jurisdiction." (*Missouri Pacific R. R. Co.* v. *Porter,* 273 U. S. 341, 346.)

LEWIS, J., concurs with LOUGHRAN, Ch. J.; FROESSEL, J., concurs in separate opinion in which CONWAY, J., concurs; DYE, J., dissents in opinion in which DESMOND, J., concurs; FULD, J., concurs for affirmance in separate opinion in which DESMOND and DYE, JJ., also concur.

Judgments reversed, etc. [See 303 N. Y. 673, for decision denying motion for reargument with statement that in voting for reversal in separate opinion, CONWAY and FROESSEL, JJ., concurred with LOUGHRAN, Ch. J., that section 876-a of the Civil Practice Act does not in this case bar injunctive relief.]