James S. Brown, J.
Plaintiff corporation sues to restrain defendant union from picketing plaintiff’s plant with “strike” signs, loitering in front of it, interfering with shipments to and from the plant and creating a false impression that a labor dispute exists between plaintiff and defendant, and also sues for damages. Defendant’s answer consists of a general denial and five affirmative defenses, i.e., (1) that the complaint is insufficient, (2) that it fails to comply with section 876-a of the Civil Practice Act, (3) that the defendant’s acts constitute lawful free speech, (4) “that the plaintiff collusively and fraudulently entered into a ‘ sweetheart ’ contract with Allied Trades Local 18, National Industrial Unions Council and intimidated and coerced its employees into signing with said Local 18; that since its initial contact with the employees of the plaintiff said Local 18 has not in truth and in fact acted as the labor representative of the plaintiff’s employees and that by reasons of said alleged contract is null and void and plaintiff entered into said alleged contract and by corruptly conspiring with said Local 18 as aforesaid is guilty of ‘ unclean hands ’ ” [sic]; and (5) that this court is pre-empted from assuming jurisdiction of this matter.
The evidence adduced at the trial shows that three brothers upon being discharged from military service some 10 years ago formed the plaintiff corporation and started a business of manufacturing wrought iron products. Their plant has since expanded and now employs 40 to 60 in help.
In 1954 this plaintiff entered into a three-year contract with a union referred to as “Local 1115.” Before that contract expired the employees informed plaintiff that they did not want to be represented by that union any longer. The employer so informed the representatives of Local 1115 when they endeavored to renew that contract.
*453 Subsequent to that representatives of Local 18 made overtures to the employees. They then called on the employer and produced membership cards signed by about 20 employees. At that time there were 35 employees. After checking the authenticity of the signatures the employer began negotiations with Local 18. After several conferences, a three-year collective bargaining agreement was executed by the parties on May 15, 1957.
Three months later, in August, 1957, defendant’s agents, who had prevailed upon some of plaintiff’s employees to sign up with it, demanded that plaintiff disregard its Local 18 contract and enter into a new contract with defendant. This demand was refused and picketing commenced on September 4 with numerous pickets parading in front of plaintiff’s plant with placards stating that the employees were on strike. Some employees were prevailed upon to strike but practically all have since returned.
Efforts were made, continuously to impede deliveries to and from the plant, with several pickets occasionally hanging on a truck to stop it. As a result of all this, only part of plaintiff’s recent orders have been filled. On at least one occasion the policeman on duty had to send to the station house for help. There was at least one assault and it became necessary to escort employees back and forth to the subway station. Such conditions prevailed until September 25, 1957, when this court issued a temporary injunction (General Iron Corp. v. Livingston, 8 Misc 2d 538) Avhich was affirmed by the Appellate Division (4 A D 2d 959).
On motions and applications preliminary to trial, defendant has been insisting that plaintiff’s “ colored and Puerto Rican employees ” were being exploited. However, the proofs offered by defendant would indicate these to be irresponsible, unsubstantiated charges with no basis in fact. The defendant called a total of seven employees. They were all Puerto Rican and testified through a Spanish interpreter. On direct examination they readily stated that they preferred the defendant union to Local 18, with whom they had originally signed up a few months before. However, when asked by the court why they wanted to make the change in unions they all stated it was because the defendant’s representatives had assured them they could get them higher wages.
It is interesting to note that five of these seven witnesses are still working for the plaintiff and it is also significant that the average wage increases of these seven employees during their employment with the plaintiff has amounted to more than 10% per year.
*454 On October 15, 1957 long after defendant commenced its campaign to alienate the plaintiff’s employees, some 18 of them, including six of the afore-mentioned seven who testified, signed a declaration, typed in Spanish as well as English, which asserts in part: “In spite of recent efforts by District 65 Union to seek to represent us we desire to demonstrate our loyalty and solidarity to local 18 and hereby by this document repudiate District 65.”
On October 14, the preceding day, Local 18, by a written agreement agreed to reimburse the employees for any dues paid by them to defendant. Defendant’s assertion that the contract with “Local 18” is a collusive “sweetheart contract” and therefore invalid, is not established by evidence. Neither is the assertion that plaintiff corruptly conspired to obtain this contract and is therefore guilty of ‘1 unclean hands ’ ’ and not entitled to relief in this court, nor that Local 18 has not in truth and in fact acted as the labor representative of plaintiff’s employees.
On the contrary, the evidence establishes, and I find as a fact that the contract under attack is a valid and subsisting agreement and is binding upon.plaintiff and Local 18, a union which is very much alive and to which the employees have been paying their dues right up to the present time. I also find that the objective of the picketing is to force plaintiff to breach its contract with Local 18 and to sign a contract with defendant. Such objective is unlawful and picketing in furtherance thereof maybe enjoined (see Wood v. O’Grady, 307 N. Y. 532; Goodwins, Inc. v. Hagedorn, 303 N. Y. 300). Therefore my conclusion is that this controversy does not involve any “ labor dispute ” within the contemplation of section 876-a of the Civil Practice Act.
The situation here is very similar to that in Metzger Co. v. Fay (8 Misc 2d 1030, affd. 4 A D 2d 436). Although the case only involved an application for a temporary injunction, the following observations of the court at Special Term are pertinent (p. 1032): “Stripped of all extraneous factors this situation involves a struggle between rival unions for the privilege of representing plaintiff’s employees. In those areas of the field of labor relations that have been pre-empted by Congress, our courts may not assume jurisdiction. Here, however, where there is no labor dispute the court is not without power to prevent injustice to the employer (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188; Goodwins, Inc. v. Hagedorn, 303 N. Y. 300). The court will not sit supinely by to watch the destruction of a business whose owners have merely been charged, without proof, with collusive conduct and the obtaining and maintaining of a union * # *. There is no question but that there is a collec *455 tive bargaining agreement in full force and effect and, as was held in Matter of Triboro Coach Corp. v. State Labor Relations Bd. (286 N. Y. 314) the union members have no right to breach that agreement by the selection of a new bargaining representative in order to impair the existing contract.”
The following language by the Appellate Division in that case is also in point (pp. 439-440): “ In view of the existence of a collective agreement, presumptively valid, we have held that on the present state of the record we are not prepared to rule that the picketing here has a lawful objective, and accordingly are permitting the injunction pendente lite to stand. There can no longer be any doubt about the power of a State court to enjoin picketing under circumstances where its Legislature or courts have adopted a public policy directed against picketing for unlawful objectives. The decision in Teamsters Union v. Vogt, Inc. (354 U. S. 284) makes this indisputably clear. In effectuating its own public policy, the courts do not intrench upon the pre-empted field of labor relations provided for in the TaftHartley Act.”
The following language appears in Rayex Corp. v. Sanchez (11 Misc 2d 261): 1 ‘ formal contract exists between plaintiffs and another union, with no-strike and arbitration provisions. If plaintiffs’ employees are dissatisfied with their present union representation they should get rid of the contract by legal means; but while that contract is in effect, they have no right to break it; and the defendants have no right to induce or aid in its breach. Ample machinery exists for the consideration of the employees’ grievances, and they should make use of it.”
The injunctive relief prayed for is granted in all respects. The demand for a money judgment against defendant union is denied since plaintiff has failed to allege and prove the individual liability of every member of defendant union. Noncomplianee with said rule precludes recovery (Martin v. Curran, 303 N. Y. 276).
Judgment with costs is granted in favor of plaintiff.