5 N.Y.2d 40 (1958)
Pleasant Valley Packing Company, Inc., Appellant,
v.
Samuel J. Talarico, Individually and as President of the Amalgamated Meatcutters, Butchers Workmen and Affiliated Crafts of North America, District Union, Local No. 1, AFL-CIO, et al., Respondents.
Court of Appeals of the State of New York.
Argued April 29, 1958.
Decided June 25, 1958.
Warner M. Bouck and William D. Ferguson for appellant.
Samuel Bader for respondents.
Judges FROESSEL, VAN VOORHIS and BURKE concur with Chief Judge CONWAY; Judges DESMOND and FULD dissent in separate opinions, each concurring in the other's, and Judge DYE concurring in both.
*43 Chief Judge CONWAY.
The sole question here presented is whether Special Term possessed the power to grant plaintiff's motion for a temporary injunction enjoining picketing and related activities by the defendants. The Appellate Division, while affirming Special Term's findings of fact, has held, as a matter of law, that the Special Term had no such power.
The facts, as affirmed, are these: Plaintiff is a meatpacker, its plant and store being in Schenectady, New York. An independent union has for some years been the exclusive bargaining agent of plaintiff's employees, certified as such by the National Labor Relations Board. For about a year prior to February, 1957, the defendants  officers of a district union  had been circulating literature among the employees of the plaintiff and doing other lawful acts, with the purpose of influencing the employees to become members of the defendant union. These efforts not being successful, on February 22, 1957 the defendants began picketing in front of the plaintiff's premises. The pickets carried signs containing the legend:
UNFAIR TOC>ORGANIZED LABORC>This Employer's EngagingC>UNFAIRC>LABOR PRACTICEC>AMALGAMATEDC>MEAT CUTTERSC>UNIONC>Local #1, A.F.L. C.I.O.
Although the picketing was not disorderly, on February 25, 1957 one of the drivers of the Safeway Truck Lines was threatened by agents of the defendants' union and informed that he should not cross the picket line. As a result of this, *44 that driver and other drivers of the trucking company thereafter refused to cross the picket line. This had the effect of reducing plaintiff's weekly supplies to its serious detriment since it is a packing company.
Subsequently, plaintiff instituted the present suit for a permanent injunction and moved for a temporary injunction against the picketing. Special Term granted the temporary injunction holding that defendants' picketing of plaintiff's establishment constituted "economic pressure"; that the purpose of the picketing was to exert pressure, economic or otherwise, on plaintiff employer to compel plaintiff to commit an unlawful act  that of interfering with the rights of its employees to choose their own bargaining representatives; that the picketing was not "organizational" but was "recognitional" and under the circumstances was unlawful under the laws of the State of New York; that from the affidavits submitted by the parties it could not be determined authoritatively that a genuine labor dispute existed between the parties and that, therefore, for the purpose of the motion for the temporary injunction it was found that the facts herein do not come within section 876-a of the Civil Practice Act; that defendants' conduct is not defined as an unfair labor practice in section 8 of the National Labor Relations Act and, that being so, the State courts are not pre-empted and have jurisdiction.
The Appellate Division reversed, on the law, stating: "In our view, the union activities enjoined by the Special Term order lie within the field of unfair labor practices which Congress has pre-empted for regulation under the Taft-Hartley Act (Labor Management Relations Act of 1947, U. S. Code, tit. 29, § 141 et seq.). That conclusion seems necessarily to follow from the decision in Garner v. Teamsters Union (346 U. S. 485)".
In our opinion, the Appellate Division erred in so holding.
In Goodwins, Inc., v. Hagedorn (303 N.Y. 300), defendant union picketed the plaintiff employer's store for the purpose of forcing the employer to recognize the defendant union as sole collective bargaining agent despite the competing claims of a rival labor organization to represent the same employees. Plaintiff sought to enjoin the picketing. Special Term dismissed the complaint and the Appellate Division affirmed. We *45 reversed and ordered a new trial, pointing out that section 876-a of the New York Civil Practice Act, which precludes the issuance of an injunction when a labor dispute is involved, does not bar injunctive relief in a case where a union's objective is to coerce an employer into committing an unlawful act. So, here, it would be unlawful for the plaintiff employer to yield to the demand of the defendants that it recognize[*] the defendants' union instead of the union duly certified by the National Labor Relations Board. Since the purpose of the picketing is to force the employer to commit an unlawful act rather than to accomplish a lawful labor objective, no labor dispute is involved and section 876-a of the Civil Practice Act does not bar injunctive relief if there be a finding that irreparable injury to the plaintiff will follow unless the relief requested is granted. Special Term has so found and the Appellate Division has affirmed.
The remaining and crucial question is whether the National Labor Management Relations Act disables our State courts from acting in the circumstances of this case. It is clear that if the National Labor Relations Board is vested with power to entertain the plaintiff's grievance against the defendant union, our courts are without jurisdiction to act. If the board is not vested with such power State action is still permissible (Garner v. Teamsters Union, 346 U. S. 485).
The National Board is empowered to act in those instances where the National Labor Management Relations Act is violated. Do defendants' acts constitute a violation of that act? They do only if they may be considered an unfair labor practice as that term is defined in the act. The provisions of the act which come closest to touching this case are contained in paragraph (4) of subdivision (b) of section 8 which says that "It shall be an unfair labor practice for a labor organization or its agents  * * * (4) to engage in * * * a strike * * * where an object thereof is: * * * (C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his *46 employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; * * *." (U. S. Code, tit. 29, § 158; emphasis supplied.) The picketing conducted by the defendant union does not fall within the foregoing definition of an unfair labor practice under the Federal statute because no strike is involved in this case. Special Term specifically found: "Here there is no strike but merely picketing for an alleged illegal purpose. That conduct is not defined as an unfair labor practice in section 8 of the National Labor Relations Act. Hence, the State courts are not pre-empted and have jurisdiction. (Goodwins, Inc., v. Hagedorn, 303 N.Y. 300.)"
It may be argued that although the picketing here involved is not specifically declared to be an unfair labor practice, it is so closely related to activities proscribed by the Federal statute that it may be said to fall within the area of proscription. Such an argument must be rejected, however, for as Judge FROESSEL said in his concurring opinion in the Goodwins case (303 N.Y. 300, 308, supra): "Had the sponsors of the Taft-Hartley Act and the Congress so intended, surely they would have made their purpose manifest, for plain language was readily available."
In asserting that the State courts have been pre-empted, the defendants rely upon the following cases: Garner v. Teamsters Union (346 U. S. 485, supra); Weber v. Anheuser-Busch, Inc. (348 U. S. 468); Retail Clerks Int. Assn. v. Newberry Co. (352 U. S. 987); Guss v. Utah Labor Bd. (353 U. S. 1); Meat Cutters v. Fairlawn Meats (353 U. S. 20); San Diego Unions v. Garmon (353 U. S. 26). Those cases, involving various factual situations, do no more than hold what we recognized to be so in the Goodwins case (supra), namely, that in a case where the National Labor Relations Board is vested with the power to entertain the plaintiff's grievance against the defendant union, because the defendant union is guilty of an unfair labor practice, a State may not afford the plaintiff injunctive relief. Each of the cited cases is distinguishable on the facts from the present one, which does not involve an unfair labor practice within the language of the Federal Act.
It is noteworthy that in the Anheuser-Busch case (supra), the Supreme Court referring to the Garner case said (pp. 480-481): *47 "But as the opinion in that case recalled, the Labor Management Relations Act `leaves much to the states, though Congress has refrained from telling us how much.' 346 U. S., at 488. The penumbral area can be rendered progressively clear only by the course of litigation."
In the light of the foregoing statement emanating from the Supreme Court, we do not think we should be quick to announce a lack of State jurisdiction in this general area. If we rule against jurisdiction and we are wrong in so ruling, the unsuccessful litigant may well be irreparably harmed. We are of the mind that any doubt should be resolved in favor of jurisdiction, leaving it to the Supreme Court to finally resolve the matter. We recognize, of course, that the facts in the Garner case (supra) come close to the facts in the present case but believe that the cases are distinguishable since there the picketing union sought to compel the employer to encourage its employees to join the picketing union  an unfair labor practice  whereas here the complaint alleges that the defendants demand that plaintiff recognize the defendant union instead of the certified union. To do so would not necessarily entail coercion by the plaintiff upon its employees, but would entail an abrogation of plaintiff's legal duty to contract only with the certified union, with which it has a contract required by law. Hence, the factual situation before the court in the Garner case was different from that in the present case. Conceivably the Supreme Court of the United States could rule that the difference is not substantial. However that may be, it does not clearly appear that the difference in the cases is insubstantial and, so, we feel that the only proper course is to hold in favor of our jurisdiction.
The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division, and the order of Special Term reinstated. The certified question should be answered in the affirmative.
DESMOND, J. (dissenting).
The Appellate Division, reversing a temporary injunction against picketing by defendant union of plaintiff's meat-packing plant, certified to us a question of law as to whether Special Term had power to grant the injunction. I think, as did the Appellate Division, that the *48 question should be answered in the negative. Recent and clearly pertinent United States Supreme Court decisions hereafter discussed hold that the picketing which the Special Term order here sought to enjoin was one of the unfair labor practices which Congress has pre-empted for regulation under the Taft-Hartley Act (U. S. Code, tit. 29, § 141 et seq.).
Before and during this picketing, a so-called "independent" union (not defendant) has been, by certification of the National Labor Relations Board, declared to be the exclusive bargaining agent of plaintiff's employees. Nevertheless, defendant picketed the plant. The Appellate Division correctly found that plaintiff is engaged in interstate commerce and that this was "recognitional" picketing by a "stranger" union for the purpose of compelling plaintiff employer to commit an act unlawful under Taft-Hartley, that is, to deal or bargain with defendant despite the existing certification of a different union. Such an application of economic pressure by a union against an employer for such a purpose is condemned as an unfair labor practice by Taft-Hartley (Garner v. Teamsters Union, 346 U. S. 485; Retail Clerks Int. Assn. v. Newberry Co., 352 U. S. 987; Meat Cutters v. Fairlawn Meats, 353 U. S. 20; San Diego Unions v. Garmon, 353 U. S. 26). Those cases, although involving various factual situations, all hold that State courts and State boards are forbidden to intrude into the congressionally pre-empted field (see Federal Pre-emption  A Comment, 33 N. Y. U. L. Rev. 691; Stranger Picketing and the Injunction in New York, N. Y. L. J., June 11, 1958, p. 4). Garner and Retail Clerks Int. Assn., at least, say definitely that conduct of the kind charged against this defendant union was an unfair labor practice within the prohibitions of the Federal Act. It is true that in the present case, as distinguished from Garner and Retail Clerks Int. Assn., there had been a certification of a rival union by the National Labor Relations Board. But the fact of such prior certification makes it all the clearer that the controversy was for the National Board and not for the State courts to determine. Plaintiff would have us hold that the Taft-Hartley Act does not cover this situation since there is no actual strike (see § 8, subd. [b], of the Federal statute, U. S. Code, tit. 29, § 158). But the ready answer to that is that there was no strike in any of the recent United States *49 Supreme Court cases above cited and yet in each of them it was held that the Federal Board alone had power to deal with an attempt by an uncertified union to compel the employer to deal with it.
It is suggested that an affirmance here would be inconsistent with Goodwins, Inc., v. Hagedorn (303 N.Y. 300). Whether or not that be so, we are controlled here by the later Garner, Meat Cutters and Retail Clerks Int. Assn. cases (supra).
The order appealed from should be affirmed, with costs, and the certified question answered in the negative.
FULD, J. (dissenting).
I, too, believe that the court at Special Term lacked the jurisdiction to issue an injunction. The defendant union, despite the fact that another union had been certified as the exclusive bargaining agent of plaintiff's employees, picketed the plaintiff's premises in order to force it to bargain with defendant as the representative of its employees. Such conduct constitutes an unfair labor practice under section 8(b) (4) (C) of the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 141 et seq.).
It is not necessary that the union be engaged in "a strike"; it is enough, to quote the statute, that it "induce or encourage the employees * * * to engage in a strike or a concerted refusal in the course of their employment". (See Electrical Workers v. Labor Bd., 341 U. S. 694, 701-702; National Labor Relations Bd. v. Associated Musicians, 226 F.2d 900, 904, cert. denied 351 U. S. 962.) In the Associated Musicians case, the Court of Appeals for the Second Circuit, addressing itself to this very point under another clause of section 8, identically worded, wrote (226 F.2d, at p. 904):
"Respondents argue that, since no employees * * * engaged in a strike, there has been no violation of § 8(b)(4)(A) of the Act. They contend that the words `induce or encourage' * * * refer only to a successful inducement and encouragement; where no actual strike or concerted refusal to work ensues, no violation can be found. This view, however, is supported neither by common understanding of the meaning of these words nor by authority. [Cases cited.]"
*50 As the Supreme Court has observed, picketing, even though peaceful, is a form of inducement and encouragement (Electrical Workers v. Labor Bd., 341 U. S. 694, 701-702, supra): "To exempt peaceful picketing from the condemnation of § 8 (b) (4) (A) as a means of bringing about a secondary boycott is contrary to the language and purpose of that section. The words `induce or encourage' are broad enough to include in them every form of influence and persuasion."
Nor is there any doubt of the existence of the other conditions which must be shown to establish an unfair labor practice under the Labor Relations Act. Indisputably, "another labor union [was] certified as a representative" of the employees by the National Labor Relations Board (Labor Management Relations Act of 1957, § 8[b][4][C]). And, just as clearly, the object of the union's conduct was to force or require the employer "to recognize or bargain with a particular labor organization as the representative of his employees" (ibid.). The court at Special Term expressly found that the picketing carried on by defendant union was "recognitional," not "organizational," and the Appellate Division affirmed this finding. It follows, therefore, that the defendant's conduct is covered by the federal statute.
On the other hand, if the picketing were to be regarded as having been for organizational rather than recognitional purposes, the state courts would, nevertheless, still be barred from granting injunctive relief. In such a case, the conduct sought to be enjoined would be protected by the federal act and, under the pre-emption doctrine, not subject to interference by any state court or board. (See Garner v. Teamsters Union, 346 U. S. 485; Weber v. Anheuser-Busch, Inc., 348 U. S. 468; Retail Clerks Int. Assn. v. Newberry Co., 352 U. S. 987; National Labor Relations Board v. Local 50, 245 F.2d 542.)
In short  whether the picketing is considered recognitional or organizational, whether the activities of defendant union are condemned by the federal statute as an unfair labor practice or by it protected as permissible conduct  our courts may not exercise jurisdiction. "It is not necessary or appropriate for us", the Supreme Court declared in the Garner case (346 U. S. 485, 489), "to surmise how the National Labor Relations Board might have decided this controversy had petitioners *51 presented it to that body. The power and duty of primary decision lies with the Board, not with us." (Cf. Meat Cutters v. Fairlawn Meats, 353 U. S. 20, 23-24; San Diego Unions v. Garmon, 353 U. S. 26; Youngdahl v. Rainfair, Inc., 355 U. S. 131).
The order of the Appellate Division should be affirmed and the certified question answered in the negative.
Order of Appellate Division reversed and that of Special Term, dated April 30, 1957, reinstated, with costs in this court and in the Appellate Division. Question certified answer in the affirmative.
NOTES
[*] It will be remembered that Special Term found that the picketing was not "organizational" but was "recognitional" and that the Appellate Division affirmed the findings of fact made by Special Term. Affirmed findings of fact are conclusive in this court.