Bernard S. Meyer, J.
Plaintiff employer moves for a temporary injunction. The action seeks a permanent injunction and damages against defendant union, hereafter referred to as ‘ ‘ Local 164 ”. In a companion action, another union, hereafter referred to as “ Local 51 ”, is the plaintiff. That action is based on the same set of facts, and in it Local 51 seeks a permanent injunction and damages and has moved for a temporary injunction. Local 164 cross-moves in each proceeding on the complaint alone for dismissal of the respective complaints. The motions for temporary injunction and the cross motions to dismiss the complaints are denied.
The motions to dismiss will be considered' first. While the respective complaints may be defective with respect to the claim for money damages (see Martin v. Curran, 303 N. Y. 276; Atlantic-Pacific Mfg. v. Quinnonez, 10 Misc 2d 1019, 1028, affd. without opinion 6 A D 2d 803; General Iron Corp. v. Livingston, 12 Misc 2d 451, 455), each states a sufficient cause of action for an injunction. Goodwins, Inc. v. Hagedorn (303 N. Y. 300) establishes that where an employer has a valid and existing contract with one union, picketing by a rival union may be enjoined notwithstanding the provisions of section 876-a of the Civil Practice Act (see Benetar, Picketing and Injunctions, N. Y. U. 11th Annual Conf. on Labor, p. 127 [1958]). The complaint alleges such a contract and the motion is made on the complaint alone. The court, therefore, may not consider the affidavits submitted in opposition to the main motion and must deny the motion to dismiss. (Beisner v. Kelly, 9 A D 2d 789 [2d Dept.].) The denial is, however, without prejudice to a further motion, under rule 107 of the Rules of Civil Practice, or to the allegation of facts in the answer setting up the defense that a labor dispute exists and that section 876-a of the Civil Practice Act has not been complied with.
Turning now to the motion for a temporary injunction, the court finds that after Local 164 began organizing activities and had signed up some of the employees, a conference between the employer and representatives of Local 164 was arranged. At the request of the employer that conference was postponed, and during the period of postponement the employer signed a con *595 tract with Local 51. Local 51 has not, however, been certified by the State Labor Relations Board, and apparently has not sought such certification. On'the day on which the adjourned conference between the employer and Local 164 was to have taken place, Local 164 learned that a contract had been made with Local 51. Local 164 immediately filed charges with the State Labor Relations Board that the employer had violated subdivisions 3, 4, 5 and 10 of section 704 of the Labor Law, called out the four employees who had become members of Local 164, and began picketing. The signs used in picketing stated that:
“ The employer signed a contract with an independent UNION WITH WAGES AND CONDITIONS AND WELFARE FAR BELOW THE STANDARD CONDITIONS OF LOCAL 164 AFL-CIO. LOCAL 164 FILED AN UNFAIR LABOR CHARGE AT THE NEW YORK STATE LABOR RELATIONS BOARD. ’ ’
It was contended in the moving papers that the sign was false, . but it has not been shown that the contract terms are not below the standard conditions of Local 164, and on the oral argument it was admitted that charges were filed with the State Labor Relations Board on October 26, 1959, though at the time the affidavits were sworn to, the affiants were not aware of that fact. There is no contention in the papers that there was any violence from the time picketing began until it was stayed under the order to show cause. There is, therefore, no factual basis for the issuance of a temporary injunction restraining the picketing because of violence or the use of false or misleading signs. Consequently, if an injunction is to be issued, it must be based on the doctrine of Goodwins, Inc. v. Hagedorn (303 N. Y. 300, supra).
Generally, it is held that there is a presumption of the validity of an existing collective bargaining contract. (Matter of Levinsohn Corp., 299 N. Y. 454, 463; Metzger Co. v. Fay, 4 A D 2d 436; General Iron Corp. v. Livingston, 8 Misc 2d 538, affd. 4 A D 2d 959.) Accordingly, where such a contract is shown, the.presumption has been considered sufficient to warrant the issuance of a temporary injunction restraining picketing by the minority union, notwithstanding the contention by the minority union that the contract is of the “ sweetheart ” variety. (Metzger Co. v. Fay, supra; General Iron Corp. v. Livingston, supra; Tonira Ind. v. Tishler, 14 Misc 2d 541.) However, that presumption cannot furnish the basis for the issuance of a temporary injunction 'where, as here, the validity of the contract has been challenged before the State Labor Relations Board and there appears to be substance to the challenge. (See Jarvis Surgical *596 Co. v. Davis, 15 Misc 2d 1035; Planet Wood Prods, v. “ Doe ”, 13 Misc 2d 171, 174.) The validity of such a contract is a question for determination by the State Labor Relations Board rather than the courts. (See Matter of Levinsohn Corp., supra, p. 466; cf. Planet Wood Prods, v. “Doe”, supra, p. 175.) Upon certification by the board, any labor dispute is at an end. (Florsheim Shoe Store Co. v. Shoe Salesmen’s Union, 288 N. Y. 188, 197.) It is not necessary now to decide that the mere filing of such a challenge with the board is sufficient to overcome the rule of the Goodwins (supra) case, for there are in the instant case at least the following additional factors present: (1) Local 51 has not been certified by the State Labor Relations Board; (2) So far as appears from the papers, Local 51 had made no efforts to organize the employer’s restaurant until after Local 164 began its efforts and had made itself known to the employer; (3) The president of Local 51 and the president of the employer corporation were known to each other from prior business dealings. It is alleged and not denied that the president of the restaurant corporation is the insurance broker for the president of Local 51 and has referred to the latter as a good friend; (4) Local 51 maintains an office in a converted house where it is alleged, and not denied, it has no office space, there being only a sign in the hall reading: ‘ ‘ For information call IV 9-1794” the home telephone number of the president of Local 51; (5) The contract with Local 51 was entered into on the date originally scheduled for conference between Local 164 and the employer, the employer having first requested adjournment of that conference; (6) The four employees who are members of Local 164, though present on the day that the contract with Local 51 was signed, were not advised of its signing or of the designation of an employees’ committee, although the contract appears to be witnessed by two of the employees as a committee of all the employees; (7) The contract is on a mimeographed form, which is apparently the standard form used by Local 51, but has been amended by ink modifications in 13 different respects everyone of which is favorable to the employer and unfavorable to the employees; (8) The matter was immediately presented to and is now before the State Labor Relations Board which has held a preliminary hearing. On the papers presented, it, therefore, appears that there is a substantial basis for Local 164’s contention that a “ sweetheart ” contract has been entered into in violation of the State Labor Relations Law. It has been held that a labor dispute exists within the meaning of section 876-a of the Civil *597 Practice Act where an employer during the course of negotiations with one union enters into a contract or negotiations for a contract with a rival union. (Johnson v. Bee Line, Inc., 262 App. Div. 762; J. Rabinowitz & Sons v. Devery, 33 N. Y. S. 2d 752.) Whether or not the Goodwins (supra) case be considered to weaken the authority of those decisions, it must be held that a labor dispute does exist where the validity of a contract with what purports to be a majority union has been challenged before the State Labor Relations Board and upon the facts there appears to be a substantial basis for the challenge. (Feldblum, Some Aspects of Minority Union Picketing in New York, 20 Ford. L. R. 176, 190.) Under such circumstances, a temporary injunction should not issue until the matter has been determined by the board adversely to the minority union or the board has refused jurisdiction or it appears that the minority union is not diligently prosecuting its complaint before the board. It does not appear that the instant case fits any of those categories at the present time. If the parties co-operate to that end, the matter may be promptly brought on before the board. Should Local 164 refuse such co-operation, a further application may be made, though apparently even in that situation a hearing would have to be held before a temporary injunction could issue. (Homann v. O’Grady, 6 A D 2d 872; Baylis v. Quinnonez, 286 App. Div. 1030; Palermo v. Motto, 283 App. Div. 746.)
Whether a temporary injunction could be granted under section 876-a of the Civil Practice Act is not now before the court, since the complaint and motion papers herein do not comply with the requirements of that section.
The stay contained in the order to show cause and which, with the consent of Local 164, was continued at the hearing, is vacated and the motions and cross motions in both proceedings are denied. Short-form orders signed.