Fuld, J. (dissenting).
The plaintiff, Incres Steamship Company, Ltd., owns and operates two ocean-going liners generally engaged in the passenger cruise trade between New York City and Caribbean ports. In the spring of 1960, the defendant Maritime Workers Union organized, picketed and struck those vessels, completely disrupting their operations. The plaintiff thereupon instituted this action for injunctive relief and damages. The court at Special Term, denying a motion made by the defendants to dismiss the suit for lack of jurisdiction, granted the plaintiff the broad injunction which it had sought. The Appellate Division, though it agreed with all that the trial court had decided, modified the resulting judgment so as to limit the injunction “ to the condemned [illegal] activity * * * presented in this case ”. Both plaintiff and the defendants appeal to us as of right.
We are called upon to construe the National Labor Relations Act, for the jurisdiction of the courts over the subject matter of this action depends upon whether the National Labor Relations Board has jurisdiction under that statute. If the Board has such jurisdiction, then, the courts have no authority to act. More specifically, the question presented for decision is whether the Act applies to a controversy affecting a foreign (Liberian) flagship — engaged in foreign commerce bringing it to and from United States ports for short stays — which is 100% owned and controlled by foreign nationals and manned by a foreign crew, recruited and hired in the ship’s home port in Italy and serving under foreign articles entered abroad.
In our view, the answer is clearly in the negative. Indeed, as Justice Bbeitel observed in his comprehensive opinion for *228 the Appellate Division, such a conclusion finds strong support in recent decisions of the Supreme Court. (See Benz v. Companía Naviera Hidalgo, 353 U. S. 138; Marine Cooks v. Panama S. S. Co., 362 U. S. 365; see, also, Lauritzen v. Larsen, 345 U. S. 571.) “ Our study of the Act ”, wrote the court in the Bens case, “leaves us convinced that Congress did not fashion it to resolve labor disputes between nationals of other countries operating ships under foreign laws. The whole background of the Act is concerned with industrial strife between American employers and employees ” (353 U. S., at pp. 143-144).
The circumstance that there was here substantial continuing American foreign commerce and that the plaintiff had a New York corporation to act as its American agent is not sufficient to render inapplicable the rationale underlying the Bens decision and vest the National Labor Relations Board with jurisdiction. All-important in the case before us is the fact that the vessels were owned and controlled by Italian nationals and that their home port was, for all essential purposes, in G-enoa; in addition, it might be noted, their crews, entirely alien, consisted largely of Italians who had signed on in Italy under contracts made abroad. In our judgment, if the National Labor Relations Act were to be held to cover the foreign-owned ships here involved simply because they dock in New York City and employ a New York corporation as their American agent, it would follow that the Act applies to give the board jurisdiction over controversies involving seamen on board the great fleets of foreign flag and foreign-owned passenger and cargo vessels while engaged in trips between the Port of New York and the foreign countries.
It is hardly necessary to observe that in terms of comity between nations such a result could not help but have a disastrous effect. When in the Bens case the argument was advanced as to the Act’s applicability to foreign-owned ships, the Supreme Court expressed its concern in these words: ‘ ‘ For us to run interference in such a delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed. It alone has the facilities necessary to make fairly such an important policy decision where the possibilities of international discord are so evident and retaliative action so certain. We, therefore, conclude that any such appeal should be directed to the Congress rather than *229 the courts” (353 U. S., at p. 147). Indeed, in Lauritzen v. Larsen (345 U. S. 571, supra), the court had earlier remarked that ‘ ‘ in dealing with international commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided; nor should we forget that any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction ” (p. 582).
We will not impute to Congress — unless the intention is clearly expressed (cf. Foley Bros. v. Filardo, 336 U. S. 281, 285-286) — a concern to deal with the labor relations of alien seamen on foreign flag vessels, owned by foreign nationals, throughout the world or even while they are in American waters. The fact that our American laws apply to crews, no matter what their nationality, employed on American-owned vessels does not militate against our conclusion. It is the proper concern of Congress in passing labor laws to regulate and control conditions on American ships while they are in American waters, as well as while they are on the high seas and in foreign ports.
A completely different case is presented where the ship, flying a foreign flag of convenience, is actually owned and controlled by American nationals. In such a case — and this is the sort of case which is relied upon to support the argument and the conclusion that the National Labor Relations Act has given the board jurisdiction (see, e.g., West India Fruit & S. S. Co., 130 NLRB No. 46, 47 LRRM 1269; Peninsular & Occidental S. S. Co., 120 NLRB 1097, 42 LRRM 1113; Navios Corp. v. National Mar. Union, 402 Pa. 325, cert. den. 366 U. S. 905) —the ship may, in a very real sense, be regarded as sufficiently “American” to justify the invocation of the Federal statute.[1]
*230 It has been urged that, even though it may ultimately be decided that the National Labor Relations Act does not apply to cover the controversy here involved, the pre-emption principles enunciated by the Supreme Court require that this matter be initially presented to the National Labor Relations Board. (See, e.g., San Diego Unions v. Garmon, 359 U. S. 236, 244-245; Dooley v. Anton, 8 N Y 2d 91.) This is clearly not a Garmon or a Dooley type of situation in which the courts must yield to the exclusive authority vested in the National Board over conduct arguably an unfair labor practice or protected activity, under the Act. If there is ‘ ‘ arguability ’5 here, it is not as to whether there was an unfair labor practice or protected activity, but rather as to the very scope and reach of the Federal statute itself. In other words, as we have already stated, the question here is whether the Act applies at all to a strike or controversy arising out of the organization of the crew of a foreign flag vessel, owned and controlled by foreign nationals and manned by a foreign crew recruited abroad and serving under foreign articles executed abroad.
In point of fact, in the Benz case (353 U. S. 138, supra), the Supreme Court actually passed upon the issue whether the Act applied to the foreign flagship there involved. Such a determination could not have been made if the pre-emption doctrine were applicable, since that doctrine precludes federal courts—including the Supreme Court-—as well as state courts, from taking jurisdiction over activities which arguably involve an unfair labor practice or protected conduct. (See San Diego Unions v. Garmon, 359 U. S. 236, 244-245, supra; Plumbers’ Union v. Door County, 359 U. S. 354.) But courts, neither state nor federal, need step aside to permit the National Labor Board to pass upon questions regarding the scope and coverage of the Act. The board has no special competence in this area, and questions concerning jurisdiction are not its exclusive concern.
In sum, therefore, it is our opinion that the National Labor Relations Act does not apply to a foreign flagship owned by foreign nationals, that the board does not have jurisdiction and that such a determination may in the first instance be made by a state court.
*231 As to the further contention advanced by the defendants that section 876-a of the Givil Practice Act bars issuance of an injunction in this case, it is necessary merely to say that, since, as found by the courts below, the defendants’ conduct was for an illegal purpose and the means employed by them to accomplish that purpose unlawful (see, e.g., Southern S. S. Co. v. Labor Bd., 316 U. S. 31, 38 et seq.; Simpson v. Hamburg-Amer. Line, 1939 A. M. 0. 1469, 1480), the injunction issued by Special Term, as modified by the Appellate Division, may not be successfully attacked as impermissible. (See, e.g., Goodwins, Inc., v. Hagedorn, 303 N. Y. 300, 305-306; Dinny & Robbins v. Davis, 290 N. Y. 101.)
We would affirm the judgment appealed from.
Judges Dye, Froessel and Foster concur with Chief Judge Desmond ; Judge Fuld dissents in an opinion in which Judge Burke concurs and in which Judge Van Voorhis concurs in the following memorandum: I" concur in the dissenting opinion by Judge Fuld except that I do not reach the question whether the same result would obtain in case of vessels of foreign registry but domestic ownership.
Judgment reversed, etc.

. There can be no doubt that in the cases cited the operative fact was ownership by American nationals. Thus, in the West India case (130 NLRB No. 46), not only does the board’s prevailing opinion remark and stress again and again the vessel’s American ownership (e.g., pp. 3,15, 24, 25, 27, 32), but the dissenting opinion in so many words notes that the majority “have determined that, pursuant to Section 2 (6) and (7), the jurisdictional reach of the Act extends to the operations of American shipowners who register their vessels with, and fly the flags of, foreign nations, and that the policies of the Act will be effectuated by asserting jurisdiction over these shipowners and their operations” (p. 43).