NEW YORK SHIPPING ASSOCIATION et al., Plaintiffs, *v.* INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT, et al., Defendants.

Supreme Court, Special Term, New York County, September 14, 1955.

*Herman Goldman, Benjamin Wiener, Harry G. Liese* and *Seymour H. Kligler* for plaintiffs.

*John T. Sullivan* for defendants.

HECHT, J. This is an application by plaintiff, a membership corporation consisting of owners and operators of ocean-going vessels, for an injunction *pendente lite,* to enjoin defendants

from aiding or taking part in any strike or work stoppage or otherwise attempting to coerce plaintiffs to take any action in violation of the Waterfront Commission Compact (L. 1953, ch. 882, part I).

Plaintiff association and defendants had entered into an employment agreement on February 24, 1955, for the period ending September 30, 1956. The moving papers establish that irreparable damage will result to plaintiff's members from a work stoppage, and this is not controverted by defendants. A clear case has been made out for injunctive relief unless this is a labor dispute within the intendment of section 876-a of the Civil Practice Act. This is the only question at issue here.

The following allegations in plaintiff's affidavit are not controverted by defendants: On August 18, 1955, Bradley (president of defendant I. L. A.) notified plaintiff's representative "that he had tied up the Panama Line at Pier 64, that he intended to tie up the entire Port of New York and might extend the strike to the Atlantic coast. He said that his reason was that he was fed up with the Waterfront Commission." On August 22d defendants called a work stoppage at piers 57 and 58, North River (used by the Grace Line) because of the refusal of Huron Stevedoring Corporation to employ one McLaughlin as an extra labor longshoreman. Such refusal was pursuant to instructions from the Waterfront Commission, which had suspended McLaughlin's registration as a longshoreman.

Bradley informed plaintiff's representative " that the Waterfront Commission had revoked two or three licenses of longshoremen and that the men who had been working on the Grace Line piers would not return to work until the passes were restored; that his union and its members were on the verge of a showdown with the Waterfront Commission and that the Grace Line dispute might tie up the entire port before the day was out." Later that day Bradley requested that plaintiff's representatives meet with defendant's officers " as soon as possible as he felt that they could no longer continue taking abuse from the Waterfront Commission ". On August 23d, stoppages occurred on sixteen additional piers.

The only answering paper submitted by defendants is an affidavit by Bradley in the companion action brought by the Waterfront Commission of New York Harbor. Such affidavit does not deny any of the foregoing allegations, but in fact corroborates plaintiffs' contention that defendants are, in fact, engaging in this work stoppage for the sole purpose of frustrating the functioning of the Waterfront Commission. Thus his affidavit

alleges that the commission's regulation No. 7 nullified certain clauses in defendants' contract with plaintiff and "the announcement by the Commission that these rules were to be put into effect immediately occasioned consternation and turmoil throughout the port. The rank and file of the union, which had already been seething because of the arbitrary and unfair manner in which the law had been applied by the officials of the Commission, became unmanageable. It was only with the greatest amount of persuasion that the men were prevented from striking against the new regulations in the spring of 1955. * * * From that time forward incident after incident fanned the flames of the men's deep resentment against the Commission and all its people, and all its works."

The affidavit then continues: " On August 25, 1953 [*sic*] a letter was sent by the I. L. A. to the president of the Shipping Association, demanding that a renegotiation be had of the clauses of the contract which had been nullified by the wholly unnecessary promulgation of the amendments to Regulations of the Commission regulations. * * * The abrogation of the contract caused by the illegal invasion of the Commission into the collective bargaining domain of the parties cannot be handled in the narrow confines of the grievance machinery. The nullification goes to the essence and the heart of the agreement and can only be remedied by a complete rewriting of the contract."

From the foregoing, it is clear that the purpose of these work stoppages is to bring economic pressure on the shipowners to circumvent the alleged nullification of certain provisions of the contract by the commission's regulations. The commission had the power and the duty to nullify provisions of the contract if it contended that they violated the Waterfront Commission Act.

If the commission exceeded its power in this respect, or acted arbitrarily, defendants had their remedy by petition to the Legislature or by judicial review.

As pointed out in the decision in the companion case brought by the commission (*Waterfront Comm.* v. *International Longshoremen's Assn.,* 208 Misc. 554), dissatisfaction with the law is no excuse for flouting or breaching it. A strike for such a purpose does not come within the prohibition of section 876-a of the Civil Practice Act (*Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300, 305).

Motion for an injunction *pendente lite* is granted. Defendants expressed the desire for an early trial, which request was concurred in by plaintiffs. Accordingly, the order, to be submitted on notice, may make such provision.