Samuel Rabin, J.
The plaintiff brought this action for a permanent injunction and damages. It now moves for an order restraining the defendant local union, until the determination of the action, from calling a work stoppage by certain of its pressmen employed by plaintiff on the Saturday night-shift and in general requiring the defendants to maintain the status quo in accordance with the conditions as they existed prior to November 19, 1959.
The defendants cross-move to dismiss the complaint for legal insufficiency.
Plaintiff is the owner and publisher of an evening newspaper with a daily circulation in the Counties of Queens, Nassau and Suffolk of approximately 285,000 and a Sunday circulation totalling approximately 375,000 copies. It is a member of the Publishers’ Association of New York City, a voluntary unincorporated association comprised of the principal New York City daily and Sunday newspapers, which acts on behalf of its members in the negotiation of collective bargaining agreements for certain employees of its members.
The defendant local union is an unincorporated association affiliated with, and under the jurisdiction of, International Printing Pressmen and Assistants’ Union of North America (hereinafter called “ International ”). There subsists a collective bargaining agreement, effective December 8, 1958, and continuing in force to and including December 7,1960, on behalf of individuals employed by plaintiff in its pressroom. This agreement was entered into by defendants and the Publishers’ Association of New York City, acting as agent for the plaintiff and the other publishers who are members thereof.
Plaintiff alleges in its complaint that section 40 of this agreement provides for the arbitration of any dispute between a signatory publisher and the local union, and that “ Conditions *829 prevailing prior to a dispute shall be maintained pending final decision ” and that section 43 provides that while the collective bargaining agreement remains in effect ‘ ‘ there shall be no strikes, lockouts, vacations, absenteeism, or other forms of concerted action intended or tending to abridge the normal regular publication of the newspapers.”
Plaintiff further alleges that some men in its employ, who are members of the defendant local, work both the Saturday day-shift and the Saturday night-shift for the production of its Sunday edition and that section 15 of the subsisting collective bargaining agreement provides that such workers £ 1 shall receive the night wages herein provided that except for minor inconsequential changes in language, the foregoing contractual provisions were included in prior agreements between the Publishers’ Association of New York City and the defendant local union for over 20 years, during all of which period ££ plaintiff at no time paid to such employees overtime wages and the parties, by their conduct, established a long-standing practical construction to the effect that overtime wages shall not be paid to such employees. It is then charged that notwithstanding the foregoing, the defendant Mahoney, in the midst of his campaign for re-election as president of the defendant local, to be held on Monday, November 23, 1959, did on November 19, 1959, peremptorily demand that plaintiff pay to those of its pressmen who work the Saturday night-shift in addition to the Saturday day-shift, wages at the overtime rates specified in the agreement instead of the night wages provided in section 15 thereof, and that unless plaintiff agreed to do so by November 20, 1959, at 3:00 p.m., the aforesaid workers, members of the defendant local, would be ordered to stop work, effective Saturday, November 21, 1959, on the Sunday edition of plaintiff’s newspaper; that since the effect of the threatened order would have been the suspension of the publication of plaintiff’s Sunday edition, it submitted to the foregoing demands and brought this action when the defendants refused to resort to arbitration and to maintain the status quo pending the determination of the dispute.
The foregoing allegations spell out a good cause of action within the jurisdiction of this court for the relief demanded in the complaint, based as it is upon the breach by the defendants of the subsisting collective bargaining agreement between the parties containing a no stoppage clause.
The strike or work stoppage threatened by the defendants unless plaintiff capitulatees to their demands for the disputed overtime pay, without resort to determination of that dispute in *830 the manner provided in the collective bargaining agreement, does not obtain the status of a bona fide labor dispute and the defendants’ activities in furtherance thereof may be enjoined under the general equity jurisdiction of this court and without regard to the limiting provisions of section 876-a of the Civil Practice Act (Anchor Motor Freight N. Y. Corp. v. Local Union No. 445, 5 AD 2d 869; Matter of Aaronson Bros. Paper Corp. [Fishko], 144 N. Y. S. 2d 643, affd. 286 App. Div. 1009; New York Shipping Assn. v. International Longshoremen’s Assn., 154 N. Y. S. 2d 360, 376), and this court is not pre-empted from granting such relief on the ground that the National Labor Relations Board has exclusive jurisdiction (Employees v. Westinghouse Corp., 348 U. S. 437).
In the Westinghouse case (supra) the United States Supreme Court held that the Federal court did not have under the TaftHartley Act exclusive jurisdiction of an action by an unincorporated labor organization against the employer to enforce a collective bargaining agreement between them. In footnote 2 of the court’s opinion, written by Mr. Justice Frankfurter, at pages 443-444, he observed as follows: “It is significant, however, that breach of contract is not an ‘ unfair labor practice. ’ A proposal to that end was contained in the Senate bill, but was deleted in conference with the observation: ‘ Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.’ ”
Defendants contend that no temporary injunction may issue here because of the overtime clause contained in section 18 of the collective bargaining agreement and the claimed breach by plaintiff of a so-called “ side agreement ”. It has not been demonstrated, however, that section 18 which requires the payment of overtime wages to men who work more hours in a single shift applies to men who work the Saturday night-shift in addition to the Saturday day-shift. As for the ‘ ‘ side agreement ” providing for the adjustment of claimed grievances in regard to lunch hour pay and overtime to men who work both shifts on Saturday, it concededly expired on May 6, 1957, but was continued by plaintiff until the defendants unilaterally terminated that arrangement by their recent conduct, notwithstanding that it was deemed by the president of the International Union in his telegram to the defendant Mahoney, dated November 19, 1959, ‘ ‘ a shop practice ’ ’ in existence for 10 years that “ cannot be unilaterally discontinued by either party and the machinery provided for in the agreement between the parties for the settlement of disputes must be adhered to.” This *831 telegram concluded as follows: “ If the publisher tried to change some shop practice I am sure local number two would insist on a status quo and would be within their right in so doing so therefore this office must insist that local number two see to it that its members employed in the Long Island Press work this Saturday night shift as heretofore and the publishers request for status quo in this issue be fulfilled and the matter determined through the provisions of the agreement between" the parties ”,
The foregoing was quoted in full in a telegram, dated November 21,1959, from the International president to Henry Bobbins, acting chairman of plaintiff’s pressroom when defendant Mahoney made no response to the telegram addressed to him and could not be reached by telephone. The telegram to the acting chairman concluded: “ If my orders are not carried
out as stated above this office may be forced to impose a stewardship on local number two will you see to it that all the members of your chapel are informed of the contents of this telegram ”.
According to a supplemental affidavit of plaintiff’s associate publisher, sworn to November 27, 1959, the defendant Mahoney issued an ultimatum at 8:20 a.m. of November 27, 1959, in the face of the stay contained in the order to show cause herein, dated November 23, 1959, and served upon him that day, and chairman Mudhank and vice-chairman Bobbins at 8:45 a.m. of the same day, stated that unless payment of the disputed overtime is made within one hour, the presses will be shut down; and that plaintiff was forced to capitulate by making payment or suffering the irreparable damage involved in a newspaper shutdown.
It seems obvious from all of the foregoing that the officials of the defendant local have refused to maintain the no-stoppage provision of the existing collective bargaining agreement until the dispute is settled in the manner therein provided even when directed to do so by the International on pain of the imposition of a stewardship on the local. Under these circumstances, the plaintiff is entitled to the temporary injunction it seeks and the same is granted upon the plaintiff’s furnishing an undertaking in the sum of $2,500. The cross motion to dismiss the complaint is denied.
Settle order on one day’s notice.