E. Howabd Riugbose, J.
 

 Dairymen’s League Cooperative Association, Inc., the plaintiff in this action for a permanent injunction, moves for a temporary injunction restraining the defendants from issuing any orders, directives or other form of instructions calling for a strike, walkout, slowdown or work stoppage, by the plaintiff’s employees at its milk distributing plant in the City of Poughkeepsie, New York.
 

 The defendants cross-move for a dismissal of the complaint.
 

 The plaintiff’s chief source of supply of raw milk for the Poughkeepsie plant is from dairy farmers throughout the New York milk shed. The milk is transported from farms to various receiving stations and thereafter by tank trucks to the Poughkeepsie plant.
 

 The employees at the Poughkeepsie plant, excluding clerical and supervisory personnel, are represented by the defendant, Milk Drivers’ and Dairy Employees’ Union, Local No. 338, having its principal office at No. 2 Crary Avenue, in the City of Mount Vernon, Westchester County, New York. The defendants, F. A. Conrad and John A. Manchester, are president and secretary-treasurer, respectively of the defendant union, and both are residents of Westchester County. The defendant union is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 

 The collective bargaining agreement covering the plaintiff’s employees at the Poughkeepsie plant, was executed on or about December 18, 1961, and extended the agreement which expired on November 30,1961, at 4:01 p.m. to November 30,1963, at 4:00 p.m., retroactive to the expiration date. The December 18, 1961,
 
 *916
 
 agreement specified certain amendments to the expired agreement, which are not material here.
 

 In the forepart of January, 1962, the plaintiff contracted with one or more firms of independent over-the-road trucking concerns to transport about 75% of the fluid milk received at its Middletown, New York, and Horseheads, New York, terminals, to the Poughkeepsie plant. This change in policy eliminated the jobs of 34 tank truck drivers who lost their positions.
 

 The work stoppage at the Poughkeepsie plant including the unloading, maintenance and cleaning of the tank and unloading equipment, was in protest against the termination by the plaintiff of the employment of the tank truck operators at its Middle-town terminal, and its policy of contracting with independent companies for this service.
 

 The defendant union is not the collective bargaining representative of the drivers of the afore-mentioned tank trucks and has never represented them through collective bargaining agreements covering employees at the Poughkeepsie plant of the plaintiff.
 

 Plaintiff’s employees who were operators of tank trucks are covered by an agreement entirely separate and apart from the Poughkeepsie agreement and unrelated thereto.
 

 It is the contention of the defendants that the plaintiff has violated paragraph 36C of the collective bargaining agreement with its Poughkeepsie plant employees. Paragraph 360 (Exhibit “A”) provides: “Should any Employer, signatory to this contract, engage during the life of this contract in tank truck milk hauling, originating or terminating in the serving area covered by this contract, he shall do so with his own employees working under the contract, providing he has no conflicting contractual legal or statutory obligations, at the then prevailing rates for such work. ”
 

 It appears from a careful examination of the contract that it does not contain a provision either similar, or in substance, identical in form to that included in the Poughkeepsie agreement as paragraph 360.
 

 The defendants cross-move for a dismissal of the complaint on the ground that the doctrine of Federal pre-emption deprives this court of jurisdiction, citing as authority for its contention
 
 San Diego Unions
 
 v.
 
 Garmon
 
 (359 U. S. 236, 244-245), wherein the court said. “At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 [National Labor Relations Act] or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of
 
 *917
 
 the Act that these determinations be left in the first instance to the National Labor Relations Board.” •
 

 Subdivisions (a) and (b) of paragraph 15 of the Poughkeepsie contract provides: “ (a) No strikes, lockouts, walk-outs, or slowdowns shall be ordered, sanctioned, or enforced by either party hereto against the other during the life of this Agreement, except as against the party failing to comply with the decision and order of any arbitrator handing down a decision or making an award pursuant to Paragraph 15 hereof.
 

 “(b) The Union shall not call, sanction or enforce any sympathetic strike of its members, and the Employer shall not aid other companies in any fight that may be waged against the Union. ’ ’ There thus is squarely presented the question as to whether the courts of a sovereign State have jurisdiction of a controversy arising from a breach of a written contract, in unequivocal terms, entered into between an employer and its employees.
 

 In the
 
 Garmon
 
 case (359 U. S. 236, 245,
 
 supra)
 
 the court said: “When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.”
 

 The defendants also urge the decision in
 
 Dooley
 
 v.
 
 Anton
 
 (8 N Y 2d 91) citing
 
 San Diego Unions
 
 v.
 
 Garmon
 
 (359 U. S. 236) in support of its contention that the doctrine of pre-emption deprives this court of jurisdiction.
 

 In the case of
 
 Dooley
 
 v.
 
 Anton,
 
 the court refused to enjoin a union’s peaceful picketing upon the grounds that the union’s activities constituted an “unfair labor practice” under the National Labor Relations Act as amended, thereby conferring exclusive jurisdiction upon the National Labor Relations Board. It will be noted, however, that in the
 
 Dooley
 
 case there was no collective bargaining contract between the employer and the union, and that the latter was seeking recognition as the bargaining representative, although there was in effect an agreement between the employer and another union.
 

 It was pointed out in
 
 Employees
 
 v.
 
 Westinghouse Corp.
 
 (348 U. S. 437) by Justice Frankfurter (who also wrote the decision in the
 
 Garmon
 
 case), that the breach of an existing collective bargaining agreement is not an unfair labor practice under the National Labor Relations Act. The court’s comment was (pp. 443-444, n.): “It is significant, however, that breach of contract is not an ‘ unfair labor practice.’ A proposal to that end was contained in the Senate bill, but was deleted in conference with the observation: ‘ Once parties have made a
 
 *918
 
 collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.’ (H. R. Conf. Rep. No. 510, 80th Cong., 1st Sess. 42.) ”
 

 It has been consistently held by the courts in this State since the decision in the
 
 Westinghouse
 
 case above cited, that jurisdiction of actions arising out of the breach of a “No strikes ” clause in a collective bargaining agreement, is not vested exclusively in the National Labor Relations Board.
 
 (Anchor Motor Frgt. N. Y. Corp.
 
 v.
 
 Local Union No. 445,
 
 5 A D 2d 869;
 
 Stewart Stamping Corp.
 
 v.
 
 Uprichard,
 
 284 App. Div. 902;
 
 Long Is. Daily Press Pub. Co.
 
 v.
 
 Mahoney,
 
 21 Misc 2d 827;
 
 Bee Line
 
 v.
 
 Long Is. Local 252,
 
 157 N. Y. S. 2d 232;
 
 New York Shipping Assn.
 
 v.
 
 International Longshoremen’s Assn.,
 
 208 Misc. 558;
 
 Bickler
 
 v.
 
 Ottley,
 
 48 LRRM 2521 [Supreme Ct., Kings County].)
 

 Since the work stoppage by the defendants was clearly a breach of the “No strikes ” provision of the collective bargaining agreement, the contention of the defendants that under the theory of congressional pre-emption, the courts of the State are divested of jurisdiction, must be rejected.
 

 It is also the contention of the defendants that the strike action is a “labor dispute” within the meaning of paragraph (c) of subdivision 10 of section 876-a of the Civil Practice Act and that the plaintiff is not entitled to relief except upon compliance with the requirements of the section.
 

 There has been no issue raised as to the contractual obligations imposed by the contract between the plaintiff and its employees at the Poughkeepsie plant. The work stoppage at the Poughkeepsie plant stands admitted. It is also conceded that the employees at the Poughkeepsie plant are covered by a separate collective bargaining agreement than that entered into between the plaintiff and its employees at the Middletown plant.
 

 The defendants’ attorney, both on his argument and in his memorandum, sought to justify the work stoppage at Poughkeepsie, on laying off the truck operators at the Middletown plant due to the discontinuance of over-the-road trucking by the plaintiff.
 

 It was heretofore pointed out that paragraph 36C of the Poughkeepsie agreement is not incorporated in the Middletown agreement and it is the provision upon which the defendants rely to sustain their claim that a labor dispute exists at the Poughkeepsie plant which divests the courts of this State of jurisdiction.
 

 
 *919
 
 It is also the contention of the defendants that the work stoppage at the Poughkeepsie plant of the plaintiff constitutes a “labor dispute” within the meaning of paragraph (c) of subdivision 10 of section 876-a of the Civil Practice Act and that the plaintiff is not entitled to relief unless it complies with the requirements of the aforesaid section.
 

 Among the authorities cited by the defendants in support of their contention is
 
 Bull S. S. Co.
 
 v.
 
 Hall
 
 (11 Misc 2d 5), in which the decision followed that in
 
 Bert Mfg. Co.
 
 v.
 
 Local 810, Int. Brotherhood of Teamsters
 
 (136 N. Y. S. 2d 805), also cited by defendants. These decisions, however, appear to be in direct conflict with the decision in
 
 Stewart Stamping Corp.
 
 v.
 
 Uprichard
 
 (133 N. Y. S. 2d 579, affd. 284 App. Div. 902, motion for leave to appeal denied 284 App. Div. 981). The factual situation in the
 
 Bert
 
 case
 
 (supra)
 
 may have warranted a conclusion contrary to the decision in the
 
 Stewart Stamping Corp.
 
 case, as it was intimated in the
 
 Bert
 
 case that there were breaches of substantial provisions of the collective bargaining agreement by the employer which is not claimed in the instant controversy in relation to the Poughkeepsie bargaining agreement between the parties.
 

 The case of
 
 De Neri
 
 v.
 
 Gene Louis, Inc.
 
 (261 App. Div. 920, mod. 288 N. Y. 592), also cited by the defendants, is not in point on the issue raised for the reason that the court there found that the agreement was in violation of section 340 of the General Business Law.
 

 Any attempt to analyze all of the conflicting decisions bearing on the jurisdiction of the State and Federal courts over actions involving the relative rights of an employer and a union as parties to a collective bargaining agreement, appears wholly unproductive of a definite precedent. The uncertainty in this area of the law was suggested by Justice Backer in
 
 Consumer-Farmer Co-op.
 
 v.
 
 Milk Drivers
 
 (29 Misc 2d 688), wherein he remarked (p. 689): “In a field so fluid as that of labor law, existing State and Federal cases on the vast subject have been consistently subject to varied interpretations and made inapplicable by changes in the Federal act, changed conditions, views and decisional law.”
 

 The facts appearing from the affidavits of the respective parties submitted on this motion generally refute the existence of any labor dispute as contemplated by section 876-a of the Civil Practice Act.
 

 As previously observed, the defendants readily admitted that there exists a valid and subsisting collective bargaining agree
 
 *920
 
 ment between the defendant union on behalf of the plaintiff’s employees at its Poughkeepsie plant and the plaintiff. There is no claim by the defendants of any ambiguity, either latent or patent in the agreement. The work stoppage at the Poughkeepsie plant was conceded, or at least not denied. Although the contract contained an arbitration clause, the defendants neglected to enforce it by appropriate action.
 

 Since the work stoppage at the Poughkeepsie plant was not within the category of activities protected by section 7, or prohibited by section 8 of the National Labor Relations Act (U. S. Code, tit. 29, §§ 157, 158), this court therefore is not precluded from assuming jurisdiction.
 

 It was observed in
 
 Marine Cooks & Stewards
 
 v.
 
 Panama S. S. Co.
 
 (268 F. 2d 935), in a
 
 Per Curiam
 
 memorandum: “ As stated by this court in Burton v. Mantanuska Valley Lines, 9 Cir., 1957, 244 P. 2d 647, 650, in considering the review of an interlocutory injunction: ‘ necessarily the court must presuppose that in the case at bar it
 
 may
 
 turn out that plaintiff will ultimately lose. Thus the court
 
 may
 
 finally find the facts against the plaintiff who procured the temporary injunction. * * *
 

 And just as a court must of necessity obtain time in which to determine which party is right upon the facts, so in a substantial number of cases the time is necessarily required to resolve grave, difficult and complicated questions of law. If, in such a case, it is ultimately decided that the party who obtained the temporary injunction cannot win, that in itself does not demonstrate that it was wrong to issue the injunction. ’ ’ ’
 

 The plaintiff distributes from its Poughkeepsie plant, fluid milk and milk products to customers in the Counties of Dutchess, Putnam, Orange, Rockland, Ulster and Westchester. Its customers include dealers, hospitals, schools, institutions, retail stores, service establishments and home delivery.
 

 It appears from the affidavits of the plaintiff that it will be irreparably harmed by the continuation of the work stoppage and will lose a substantial portion of its established business.
 

 The application for a temporary injunction is granted on condition that the plaintiff promptly proceed to trial and that the undertaking filed remain in full force and effect.
 

 It is suggested that a preliminary meeting be arranged at which the facts, or a substantial part thereof, could undoubtedly be stipulated.